Norma FOSTER *v.* STATE of Arkansas

CR 84-188                                          687 S.W.2d 829

Supreme Court of Arkansas
Opinion delivered April 15, 1985

*James C. Cole,* for appellant.

*Steve Clark,* Att'y Gen., by: *Velda P. West,* Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Norma Foster, was convicted of first degree murder and sentenced to life imprisonment. This appeal from that conviction is before us under Sup. Ct. R. 29(1)(b). We reverse and remand.

The appellant's conviction stemmed from her alleged participation in the contract killing of Orin Hendrickson of Arkadelphia. At the time of the murder, the appellant was a housemother at Ouachita Baptist University in Arkadelphia. Mrs. Foster was accused of having conspired with Hendrickson's wife, Pat, and Mark Yarbrough, a student at OBU, to hire Howard Vagi, another OBU student, to kill Hendrickson in return for money. Vagi did in fact kill Hendrickson and is serving a life sentence in prison for that crime. Yarbrough was granted immunity from prosecution in return for his testimony at Mrs. Foster's trial.

The appellant raises numerous issues on appeal, and we find merit in her contention that the trial judge erred by refusing to suppress her taped statement. The facts surrounding the taping of the statement were as follows: Four officers went to the appellant's home at about 2:30 a.m. They knocked on the door, and, when Mrs. Foster answered, told her that the prosecuting attorney, W. H. "Dub" Arnold, would like to see her and for her to come with them to his office. The officers testified that they went to pick Mrs. Foster up at the prosecuting attorney's request. Once she arrived at Arnold's office, the appellant was questioned by two of the officers. The prosecuting attorney did not participate in the questioning although he was in the building. He entered the room where Mrs. Foster was being questioned once to bring a tape recorder into the room and play part of a taped statement by Mark Yarbrough. Arnold told the appellant, "We know whatever the truth is. You might as well tell them." He then left the room. Before taping Mrs. Foster's statement, one of the officers informed her of her rights and she signed a waiver form.

The appellant contends that she was unlawfully brought to the prosecutor's office for questioning and she is right. When we review a ruling on a motion to suppress evidence, "we make an independent determination based

upon the totality of the circumstances." *Grant* v. *State*, 267 Ark. 50, 589 S.W.2d 11 (1979). We do not set aside the trial judge's finding unless it is clearly against the preponderance of the evidence. *Ibid.*

There are several legal mechanisms by which an individual can lawfully be picked up for questioning, but none of them were used in this case.

Arkansas R. Crim. P. 2.2 provides that a law enforcement officer may request a person to furnish information or to otherwise cooperate in the investigation of a crime. Rule 2.3 provides that if, pursuant to this rule, the officer asks any person to come to or remain at a prosecuting attorney's office, the officer shall take steps to make it clear that there is no legal obligation to comply with the request. To the contrary, no such steps were taken here. In fact, one of the officers agreed during his testimony that Mrs. Foster did not volunteer for questioning but only went to the prosecutor's office "because four officers came out to her house and picked her up and carried her down there." The fact that Mrs. Foster accompanied the officers without being arrested or forced to comply does not demonstrate acquiescence. "[C]onsent to an invasion of privacy must be proved by clear and positive testimony — a burden that is not met by showing only acquiescence to a claim of lawful authority." *Meadows* v. *State*, 269 Ark. 380, 602 S.W.2d 636 (1980). Such acquiescence is all the state has been able to demonstrate here.

Ark. Stat. Ann. § 43-801 (Repl. 1977) authorizes a prosecutor to issue subpoenas in all criminal matters under investigation. These written subpoenas must substantially follow a form provided in the statute. Here there was no subpoena used, the officers merely acted at the prosecutor's direction.

It is illegal to use a prosecutor's subpoena power "to obtain the presence of a witness for questioning by a police officer, absent the prosecutor." *Duckett* v. *State*, 268 Ark. 687, 600 S.W.2d 18 (Ark. App. 1980). It is unquestionably illegal therefore to use the office of the prosecutor, absent

even a subpoena, to obtain the presence of a witness for the same purpose. The officers picked Mrs. Foster up in the middle of the night ostensibly because the prosecutor wished to see her. The prosecutor however did not participate in the subsequent questioning except for one brief appearance to play a portion of a tape. The entire procedure whereby Mrs. Foster's presence at the prosecutor's office was obtained was merely a guise to let the officers detain her and interrogate her. Based on the totality of the circumstances, the illegality of this procedure has impermissibly tainted Mrs. Foster's subsequent statement and it should have been suppressed.

Since the case will be remanded, we will address the other issues raised by the appellant which are likely to arise on retrial.

The jury in this case was sequestered. The appellant argues that it was error for the trial judge not to administer the mandatory oath to the persons he placed in charge of the sequestered jury. We agree.

The oath is provided for in Ark. Stat. Ann. § 43-2121 (Repl. 1977):

> The jurors, before the case is submitted to them, may, in the discretion of the court, be permitted to separate, or be kept together in the charge of proper officers. The officers must be sworn to keep the jury together during the adjournment of the court, and to suffer no person to speak to or communicate with them on any subject connected with the trial, nor do so themselves.

The appellant's attorney objected twice to the trial judge's failure to swear the officers pursuant to the statute. His first objection was lodged when the officers were placed in charge of the jury at the beginning of the trial. He objected again the next day before the first witness was called. The judge obviously erred by not administering the oath as required by statute.

The appellant also contends that the trial judge erred by refusing to sequester a witness, W. H. "Dub" Arnold, the

369

prosecutor, with the other witnesses. The appellant asked the trial court to sequester the prosecutor because he expected to call him as a witness for the defense. The court did not err. Uniform R. Evid. 615 provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of . . . (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

Here, Arnold stated and the court found, that he was essential to the case because he was the attorney trying it for the state. In *McCoy Farms, Inc.* v. *J & M McKee,* 263 Ark. 20, 563 S.W.2d 409 (1978), this court found that neither the statutes on sequestration nor the Code of Professional Conduct requires the exclusion of a party's attorney when the attorney is called as a witness by the adverse party. We said in *McCoy* that a party's only lawyer falls within the category of Rule 615(3) essential persons. "The rule against the attorney who becomes a witness continuing as an advocate was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him." *Ibid.* However, had Arnold played a greater role in the interrogation of Mrs. Foster he might have been properly subject to sequestration. Instead the questioning was done by the officers and Arnold entered the room only once to play part of a tape and speak briefly to the appellant.

The appellant also assigned as error the trial judge's refusal to allow the appellant to introduce the results of Pat Hendrickson's polygraph test. The admission of the results was sought to bolster Mrs. Foster's testimony that her suspicions about Mrs. Hendrickson's involvement in the murder were dispelled when she heard that Mrs. Hendrickson had taken and passed a polygraph examination.

Ark. Stat. Ann. § 42-903 (Repl. 1977) provides that the results of polygraph tests "shall be inadmissible in all courts in this State." We have held that the results are only admissible if both parties enter into a written stipulation

agreeing on their admissibility. *Wilson* v. *State*, 277 Ark. 43, 639 S.W.2d 45 (1982). There was no stipulation between the parties and the results were therefore inadmissible. The mere mention of the test, under the circumstances, makes obvious its results, which is inadmissible hearsay.

The court erred however, when it permitted the prosecutor to call Pat Hendrickson, the wife of the deceased, who was charged with capital felony murder, as a witness even though both the court and the prosecutor knew that Mrs. Hendrickson would be advised to plead her fifth amendment privilege against self-incrimination. At the appellant's bail bond hearing, Mrs. Hendrickson's attorney informed the prosecutor, the appellant's attorney and the court that he would advise his client to invoke the fifth amendment if she was called to testify at Mrs. Foster's trial. The appellant argued that calling her in light of her attorney's statement was a "grandstand play" and sought a mistrial.

When she was called to the stand, Mrs. Hendrickson recited her name, address, the relation of the victim to her, his age at his death, and their child's name and age. She was then asked, "Mrs. Hendrickson, I will call to your attention the time immediately prior to March 10, 1983 and ask you if you knew Norma Foster?" At that point, the witness invoked her fifth amendment right.

The Court of Appeals dealt with this same question in great detail in *Sims* v. *State*, 4 Ark. App. 303, 631 S.W.2d 14 (1982). The court quoted the state's brief as follows:

> The evil in the non-testimony of such a witness is not the mere calling of the witness, but the obvious inferences drawn by a jury to a series of questions, to all of which the witness refuses to answer on Fifth Amendment grounds. In that case the questions themselves "may well have been the equivalent in the jury's mind of testimony." *Douglas* v. *Alabama*, 380 U.S. 415, 419, 85 S. Ct. 1074, 13 L. Ed. 2d 934, 937 (1965). Such improper questioning, not technically being testimony at all, deprives an accused of his right to cross-examine the witnesses against him as guaranteed by the

Confrontation- Clause of the Sixth Amendment to the federal constitution [made obligatory on the states by the Fourteenth Amendment.] *Dutton* v. *Evans,* 400 U.S. 74, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970); *Frazier* v. *Cupp,* 394 U.S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (1969); *Douglas* v. *Alabama, supra.*

The court also cited a Wisconsin decision, *Price* v. *State,* 37 Wis. 2d 117, 154 N.W.2d 222 (1967) which held: "no error is committed by the mere fact of calling a witness who will claim the privilege." Instead the court said *Namet* v. *United States,* 373 U.S. 179 (1963) "makes it clear that the forbidden conduct is the 'conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege.'"

Applying this rule to the instant case, there was an attempt by the prosecutor to build the state's case out of inferences arising from Mrs. Hendrickson's assertion of her fifth amendment privilege. "[T]he granting of a mistrial is a drastic remedy which should be resorted to only when the prejudice is so great that it cannot be removed." *Gross* v. *State,* 8 Ark. App. 241, 650 S.W.2d 603 (1983); *Gammel & Spann* v. *State,* 259 Ark. 96, 531 S.W.2d 474 (1976). Here the prejudice is great.

Reversed and Remanded.