Charles Wesley COGBURN *v.* STATE of Arkansas

CR 87-24                                    732 S.W.2d 807

Supreme Court of Arkansas
Opinion delivered July 6, 1987

*Ronald L. Griggs*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Charles Wesley Cogburn, was charged with rape for allegedly engaging in sexual intercourse with his seven-year-old daughter. He was convicted by a jury of carnal abuse in the first degree and, when the jury was unable to agree on the punishment, sentenced by the court to ten years imprisonment. On appeal, Cogburn challenges the admissibility of a videotaped interview of his daughter, the constitutionality of A.R.E. Rule 803(25)(A), the admissibility of

certain testimony, the failure to give a jury instruction, and the refusal to admit certain test results. The court of appeals certified this case to us to determine the constitutionality of Rule 803(25)(A). We find that the rule is constitutional as applied to Cogburn, but that the trial court committed error when it permitted the introduction of the videotaped interview and reverse.

## 1. *ADMISSION OF VIDEOTAPED INTERVIEW.*

The state filed a motion with the trial court on May 21, 1985, requesting permission to take a videotaped deposition of the victim pursuant to Ark. Stat. Ann. § 43-2036 (Supp. 1985). The motion was granted and the deposition was scheduled for July 2, 1985. At the deposition, however, the child became emotionally distressed and was unable to testify.

On earlier dates, February 13 and 15, 1985, Carol Dungan, assistant juvenile probation officer for the Union County Juvenile Court, interviewed the child at the request of Arkansas Social Services. Each interview was videotaped. In the course of the interviews, the child was given two dolls: a boy and a girl. She pretended the boy doll was her father and the girl doll was her, and described several incidents of sexual contact between the two. The defendant was not notified that the interviews were to take place and his attorney was not present for the interviews. The court permitted the state to play these videotapes for the jury, over Cogburn's objections, relying on A.R.E. Rule 803(25).

Rule 803(25) provides in part:

(25)(A) A statement made by a child under ten (10) years of age concerning any act or offense against that child involving sexual offenses, child abuse or incest is admissible in any criminal proceeding in a court of this State, . . .

The rule then conditions the admission of such a hearsay statement on a hearing conducted by the court, outside the presence of the jury, after which the court finds that the statement possesses reasonable likelihood of trustworthiness using criteria enumerated in the rule.

Rule 803(25) applies generally to any statement made

by a child that meets the required criteria. The Legislature, however, has made specific provisions for such statements when they are videotaped. The appropriate procedure for presenting videotaped testimony of victims of sexual abuse is provided in Ark. Stat. Ann. § 43-2036 (Supp. 1985) as follows:

> In any prosecution for a sexual offense or criminal attempt to commit a sexual offense against a minor, upon motion of the prosecuting attorney and after *notice to the opposing counsel*, the court may, for a good cause shown, order the taking of a videotaped deposition of any alleged victim under the age of seventeen (17) years. *The videotaped deposition shall be taken before the judge in chambers in the presence of the prosecuting attorney, the defendant and his attorneys. Examination and cross-examination of the alleged victim shall proceed at the taking of the videotaped deposition* in the same manner as permitted at trial under the provisions of the Arkansas Uniform Rules of Evidence. Any videotaped deposition taken under the provisions of this Act . . . shall be admissible at trial and received into evidence in lieu of the direct testimony of the victim. However, neither the presentation nor the preparation of such videotaped deposition shall preclude the prosecutor's calling the minor victim to testify at trial if that is necessary to serve the interests of justice (emphasis added).

It is an accepted rule of law that a general statute, such as Rule 803(25) (Ark. Stat. Ann. § 28-1001 (Repl. 1979 & Supp. 1985)), does not apply where there is a specific statute, such as § 43-2036, covering a particular subject matter. *Drum* v. *McDaniel*, 215 Ark. 690, 222 S.W.2d 59 (1949). Accordingly, the trial court erred in admitting the videotape under Rule 803(25).

The state concedes that § 43-2036 was not complied with in videotaping the Dungan-victim interviews. We have explained that videotaped depositions are permissible only when authorized by statute, and that the use of depositions in criminal cases is more carefully scrutinized than in civil cases. *McGuire* v. *State*, 288 Ark. 388, 706 S.W.2d 360 (1986). In *Russell* v. *State*, 269 Ark. 44, 598 S.W.2d 96 (1980) this court reversed the trial court's decision admitting into evidence a videotaped deposition

that was not authorized by statute. We stated:

> While we have approved the use of a video tape recording in taking depositions, that is only in an instance where a deposition is lawfully authorized. . . .
>
> . . . .
>
> [T]he right to take depositions in a law case rests upon statutory authority and in no case can the right be exercised unless the authority therefor exists.

Since the requirements of Ark. Stat. Ann. § 43-2036 were not followed and Rule 803(25) does not apply, the trial court erred in receiving the videotape into evidence, and we reverse the conviction on that basis. The error was prejudicial in that the defendant was denied the right to cross-examine the child at the time she made her videotaped statement, and the state was in effect permitted to offer the direct testimony of the victim twice, once through the videotape and once through live testimony.

## 2. HEARSAY TESTIMONY.

The victim made statements about the sexual abuse she allegedly suffered to her mother, Rebecca Cogburn; to Linda Coursey, a counselor at the South Arkansas Regional Health Center; and to Carol Dungan, as previously discussed. The state filed a motion to introduce this hearsay testimony on the grounds that the minor has suffered a tremendous emotional distress, and her testimony at the trial would be extremely embarrassing and difficult for her. The state argued that the testimony of the parties falls within the purview of A.R.E. Rule 803(25). After two pretrial hearings, the court permitted the testimony, but limited Dungan to either testifying about the statement or introducing the videotape. The state chose to introduce the tape.

As to the other statements offered, Cogburn argues that Rule 803(25) "clearly requires" the court to make specific findings that the statements offered possess a reasonable likelihood of trustworthiness. Cogburn states that, although a hearing was held on this question, the court simply admitted the statements without making such specific findings.

The court's action was sufficient. Rule 803(25) does not require written findings, or specific oral findings, but rather

requires the trial court to base its decision on the enumerated criteria. Two pretrial hearings were held in this case in which evidence was presented about the statements. During the hearings, the prosecutor referred constantly to the necessary criteria, commenting as he offered proof of each one. In addition, the court stated that it took "all those matters into consideration when it made its ruling", referring to the requirements of Rule 803(25). There is no merit to this argument.

Cogburn also maintains the criteria of the rule were not met in that the statements were not trustworthy. Rule 803(25) requires the judge to determine the age and maturity of the child; the time and content of the statement and the circumstances surrounding the giving of the statement; the nature and duration of the offense involved; the relationship of the child to the offender; the reliability of the assertion; the reliability-credibility of the child witness before the judge; the relationship of the child to the one offering the statement; and any other corroborative evidence of the act or any other appropriate factors.

At two pretrial hearings on the admissibility of evidence under A.R.E. 803(25), Rebecca Cogburn testified that the child was born November 7, 1977, and is able to relate events and knows the difference between telling the truth and lying. She testified that the child's teacher called and said they were having trouble with her at school, whereupon Mrs. Cogburn took the child to a counselor. The counselor suggested asking the child if she might be a sexual abuse victim. Mrs. Cogburn then talked to the child and told her that if anyone touched her where she didn't want to be touched that that was wrong and that she could talk to her about it. A week later, the child told her mother about sexual incidents with Cogburn.

The counselor testified at the pretrial hearings that she, too, discussed the allegations against Cogburn with the child and learned that the abuse began when the child was five and in kindergarten and the counselor assessed the child's mental status, her mental health and the degree of her adjustment. It was her opinion that the child was sexually abused. In *Johnson* v. *State*, 292 Ark. 632, 732 S.W.2d 817 (1987), we held that a medical witness could not give his opinion, in the absence of any medical evidence, that a child was sexually molested. Here, the coun-

selor's statement of opinion that the child was sexually abused was not argued as error before the trial court or in this appeal. Accordingly, we need not address this issue in this case.

■ The foregoing pretrial proceedings met the requirements of Rule 803(25) and no error was committed in permitting the parties' subsequent trial testimony. Had the state opted to use Dungan's testimony, that testimony would also be admissible provided it met the criteria stated above.

### 3. CONSTITUTIONALITY OF A.R.E. 803(25).

Cogburn also argues Rule 803(25) permitting hearsay testimony unconstitutionally denies a defendant the right to confront the person giving the statement. Cogburn maintains that substantive due process prohibits the admission of testimony which does not give the defendant the basic right to cross-examine the witnesses against him.

The sixth amendment's confrontation clause, made applicable to the states through the fourteenth amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

■ The United States Supreme Court has held that the confrontation clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. *California* v. *Green*, 399 U.S. 149 (1970). The Court explained that even if "the out-of-court statement may have been made under circumstances subject to none of these protections, . . . if the declarant is present and testifying at trial, the out-of-court statement for all practical purposes regains most of the lost protections." *Id. See also, U.S.* v. *King*, 613 F.2d 670 (7th Cir. 1980); *U.S.* v. *Green*, 548 F.2d 1261 (6th Cir. 1977).

■ Here, the victim testified at the trial and was subject to unbridled cross-examination. Therefore, the hearsay evidence admitted against Cogburn concerning the victim's statements under Rule 803(25) did not violate the confrontation clause and, under these circumstances, does not render the rule unconstitutional. In so holding, we must point out what is not being addressed in this opinion. Unlike our decision in *Johnson* v. *State, supra*, handed down today, no argument has been made about the

requirement in *Ohio* v. *Roberts*, 488 U.S. 56 (1980) that a declarant be unavailable before their out of court statement can be admitted at trial without violating the Confrontation Clause. Since this argument was not raised in this appeal, as it was in *Johnson*, we are unable to reach it.

### 4. *JURY INSTRUCTION—A.R.E. 803(25).*

Rule 803(25)(A)(3) provides:

> If a statement is admitted pursuant to this Section the Court shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

The state concedes that the jury was not instructed by the court pursuant to this rule, but maintains Cogburn never requested such an instruction nor objected to its omission. In addition, it notes the jury was instructed generally on credibility of witnesses. The state is apparently correct and accordingly, we would not reverse Cogburn's conviction on this basis. Inasmuch as the conviction is being reversed because of the admission of the videotape, however, at a retrial the trial court should instruct the jury as required by the rule. The instruction should be given before the testimony is offered, in the nature of an admonition, rather than given at the conclusion of the case with the packet of jury instructions. *See Chappell* v. *State*, 18 Ark. App. 26, 710 S.W.2d 214 (1986). Although the rule does not specify the time at which the instruction is to be given, we think this is the better practice since it would enable the jury to truly consider the testimony as it is given in light of the admonition.

### 5. *EX POST FACTO APPLICATION OF A.R.E. 803(25).*

The legislature amended Rule 803 and added subsection (25) in 1985. Cogburn was arrested and charged with having committed the crime in 1984. Cogburn argues that application of Rule 803(25) to him violates the constitutional prohibition against *ex post facto* laws.

In the recent case of *Smith* v. *State*, 291 Ark. 163,

722 S.W.2d 853 (1987), this court discussed at length the admissibility of evidence in the face of an alleged *ex post facto* violation. In that case, the appellant argued that evidence which could not have been admitted against him at the time the crime was committed was made admissible by legislation which became effective before he was tried. In finding no *ex post facto* violation, this court acknowledged that a law may not lawfully be changed between the time of the offense and the time of the trial, if it affects the definition of the crime or changes the punishment or makes the amount of proof necessary to sustain the conviction less than what was required at the time of offense. *See Kring* v. *Missouri*, 107 U.S. 221 (1882) and *Government of the Virgin Islands* v. *Civil*, 591 F.2d 255 (3rd Cir. 1979). We then stated:

> We find nothing in . . . [these cases] which would require reversal here. We do not have a defendant who has lost a defense or been subjected to a trial in which "less evidence" in any direct sense is required for conviction than would have been required at the time of the offense . . . Nor are we persuaded by *U.S.* v. *Henson, supra*, for in that case, the law deemed *ex post facto* required the introduction against a testifying accused of certain *facts* which might not have been introduced had the law extant at the time of the offense been applied. That is not the case before us now. Rather, we are faced with the question whether admission of certain *evidence* of clearly admissible facts violated the *ex post facto* prohibition.
>
> . . . .
>
> While we could not condone legislation criminalizing an act after its perpetration or retroactively increasing the punishment, we can find no reason to hold that a person who commits a crime has a right to rely on rules of evidence in effect at the time of the crime which govern not the facts which may be proven but the manner in which those facts are ascertained by a witness.

Applying this analysis to the case before us, the state was required to prove the same facts at the trial as it was before Rule 803(25) was enacted. The change which occurred was allowing those facts—the sexual abuse of the child—to be proven by testimony which would not have been admissible at the time of the

crime. The trial court's ruling admitting the testimony was correct.

## 6. *TRUTH SERUM TESTS RESULTS.*

Prior to the trial, the defense took the deposition of Dr. Gregory S. Kaczenski. The doctor testified that he conducted a neuropsychiatric evaluation of Cogburn and an amytal interview to look for evidence of a mental disorder. The doctor stated that the amytal interview, otherwise known as administering "truth serum", lowers the inhibitions in the conscious mind and allows the person to speak freely. While under the influence of the truth serum, the doctor said that Cogburn achieved a hypnotic state and denied having sexual contact or experience with the victim. The doctor testified that, in his opinion, the test is good evidence against Cogburn having abused his daughter. The state filed a motion in limine to suppress the doctor's testimony, which was granted by the trial court.

We do not set aside the trial court's ruling unless it is clearly against the preponderance of the evidence. *Foster* v. *State*, 285 Ark. 363, 687 S.W.2d 829 (1985). Here, the trial court was correct.

The results of polygraph tests are not admitted unless both parties enter into a written stipulation agreeing on their admissibility. *Foster, supra*; Ark. Stat. Ann. § 42-903 (Repl. 1977). Truth serum tests are generally held to occupy the same position as polygraph tests and most courts do not recognize the admissibility of either test for the purpose of proving the truth of the matter asserted. 29 Am. Jur. 2d *Evidence* § 831 pp. 923-24 (1967). Of these courts we are persuaded by the reasoning of the Texas Court of Criminal Appeals in *Cain* v. *State*, 549 S.W.2d 707 (1977) where they stated:

> The great weight of authority in this country regards results of truth serum tests as inadmissible inasmuch as they have not yet attained scientific acceptance as reliable and accurate means of ascertaining truth or deception.
>
> . . . .
>
> "It is therefore apparent that the efficacy of neither the lie detector or the *truth serum test* have gained that

standing and scientific recognition nor demonstrated that degree of dependability to justify the courts in approving their use in the trial of criminal cases." (*quoting Henderson* v. *State*, 94 Okl. Cr. 45, 230 P.2d 495 (1951)).

Because of the error in admitting the videotaped statement of the victim, the conviction is reversed.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I concur in the result reached by the majority opinion but I disagree with that part of the opinion which holds A.R.E. Rule 803(25) to be constitutional.

Before discussing the merits of the opinion I am compelled to state that this Court seems to me to be slowly shifting the entire responsibility of following the laws and procedures to the defense. It is as much the responsibility of the courts and the state to enforce and uphold the laws and rights of the people as it is the responsibility of the defense counsel. People are guaranteed rights by the laws and constitutions and it is the responsibility of the state to justify denial of these rights. This Court seems to have reached the point in too many cases where we find that an accused has either "failed to claim" or has "waived" his rights. The price of liberty is eternal vigilance and the price of justice has already been paid. We ought to be vigilant in the protection of the rights of individuals. It is not enough to say that the public has rights too. Of course they do. The public is the sum of individuals and denial of individual rights is the denial of the rights of the people.

The majority makes reference to the companion case of *Johnson* v. *State*, 292 Ark. 632, 732 S.W.2d 817 (1987), in which we hold that a medical witness could not give his opinion, in the absence of any medical evidence, that a child had been sexually abused. The majority then states that the counselor's statement of opinion in this case that the child had been sexually abused was not argued as error before the trial court or in this appeal and therefore "we need not address this issue in this case." The majority opinion concedes that the appellant in this case argues that 803(25) unconstitutionally denies a defendant the right to confront the person giving the statement. However, the majority then states that "no argument has been made about the requirement in *Ohio* v. *Roberts*, 488 U.S. 56 (1980), that a declarant be

unavailable before their out of court statement can be admitted at trial without violating the Confrontation Clause," and concludes that "since that [specific] argument was not raised in this appeal, as it was in *Johnson,* we are unable to reach it." The majority continues by stating that the state concedes that the jury was not instructed by the court pursuant to subsection (3) of 803(25), but that the state maintains that the appellant never requested such an instruction nor objected to its omission. The opinion then concludes that "the state is apparently correct and accordingly, we would not reverse Cogburn's conviction on this basis."

The three opinions being handed down today (*Cogburn* v. *State, Johnson* v. *State,* and *Hughes* v. *State*) appear to be a deliberate attempt on the part of this Court to create a "Catch 22" with respect to Rule 803(25). The opinions remind me of the Abbott and Costello comic routine of "Who's on third." Each one shifts the responsibility to the other and in the end none of the three deal with the real issue of the right to confrontation as established in the Sixth Amendment. These opinions, like old Mother Hubbard's skirt, cover everything but touch nothing.

As to the constitutionality of Rule 803(25), I doubt the validity of the legislative enactment of an addition to the rules of this Court. Under the doctrine of separation of powers, rule-making authority is a function of the Court. See *State* v. *Robinson,* 735 P.2d 801 (Ariz. 1987), in which the Supreme Court of Arizona held that state's statutory exception for child hearsay to be unconstitutional as infringing upon the Court's authority to make procedural rules for the judiciary.

Even if Rule 803(25) is considered constitutional, it was not the intent of the General Assembly to allow anything and everything an alleged child victim said to be introduced at the trial. Certainly, it was not intended to permit other witnesses to violate the rule against hearsay and testify as to the out-of-court statements of an alleged child victim and to present their own speculation on the credibility of the alleged victim.

The purpose and importance of the common law hearsay exclusion seems not to have been adequately considered by the legislature or the majority opinion. The common law exceptions to the hearsay doctrine were based upon necessity and compelling reason. Professor Wigmore has stated that the hearsay doctrine

is:

> That most characteristic rule of the Anglo-American Law of Evidence—a rule which may be esteemed, next to jury trial, the greatest contribution of that eminently practical legal system to the world's methods of procedure.

5 Wigmore, *Evidence*, p. 27.

Exceptions to the hearsay doctrine should be very limited in purpose and number. Exceptions should be narrowly defined and strictly construed against the exception. Certainly the legislature did not mean to open the floodgates to admit any and all statements of an alleged victim. The legislative amendment to court rule 803 in part states:

> (25)(A) A statement made by a child under ten (10) years of age concerning any act or offense against that child involving sexual offenses, child abuse or incest is admissible in any criminal proceeding in a court of this State, *provided*:
>
> 1. The Court finds, *in a hearing conducted outside the presence of the jury*, that the statement offered possesses a *reasonable likelihood of trustworthiness* using the following criteria:
>
> . . .
>
> j. The reliability-credibility of the child witness before the Judge
>
> . . .
>
> m. any other factor which the Court at the time and under the circumstances deems relevant and appropriate.
>
> . . .
>
> 2. The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement.

[Emphasis added.]

The videotaped former statements of the victim were introduced in this case. The majority holds that this tape did not comply with the requirements of Ark. Stat. Ann. § 43-2036 and moreover, that the introduction of the tape was prejudicial. The videotaped deposition statute meets the mandates of the Confrontation Clause as most of the safeguards attendant to a trial, such as effective cross-examination by defense counsel, are preserved. The majority is correct in upholding A.S.A. § 43-2036, but it is wrong in upholding the constitutionality of Rule 803(25). The holding, as I understand it, is that the Rule as applied to Cogburn is constitutional. In my opinion the Rule, absent an affirmative showing by the state of the witness' unavailability and the statement's reliability, is a violation of the Sixth Amendment. It is also the first time that any court or legislature has authorized the admission into evidence of the out-of-court statements of a witness without attempting to comply with the Confrontation Clause or to show a compelling reason exists for the exception.

The majority acknowledges that the jury was not instructed in accordance with 803(25)(A)(3). The statute requires the trial judge to make an independent determination of the trustworthiness of the child's hearsay statements before the testimony is presented to the jury. After such determination the court must, contemporaneous with the introduction of the child's hearsay statements, instruct the jury that it is the duty of the jury to determine for themselves the weight and credibility to be given the child's out-of-court statements. In *People v. Mathes*, 703 P.2d 608 (Colo. App. 1985), the Colorado Court of Appeals, faced with the application of a statute that included a verbatim recitation of subsection (3) of the Arkansas statute, reversed a lower court decision because the jury had not been so instructed.

I believe the attempt by the legislature to amend our rules is an unlawful infringement upon our rule-making authority. I also believe the amendment to Rule 803 is unconstitutional because it violates the Confrontation Clause of the Sixth Amendment. I therefore would hold the statements inadmissible. The hearsay statements, allegedly made by the child, had none of the constitutional safeguards required by *Ohio v. Roberts*, 448 U.S. 56 (1980). The repetition of such testimony unduly prejudices the

accused. As a result of the majority opinion upholding the constitutionality of A.R.E. 803(25), the state may eventually be allowed to produce its entire case without the interference of the Confrontation Clause. I will not be a party to such a development.

I strongly disagree with the majority's interpretation of *California* v. *Green*, 399 U.S. 149 (1970). The witness in *Green* had previously testified at a preliminary hearing under oath and subject to cross-examination. The prior testimony had been fully tested by the defense. The statement therefore complied with the mandate of the Confrontation Clause. There was an additional issue in *Green* which was not addressed because it was not yet ripe for adjudication. That issue concerned the testimony of an officer that the declarant had previously told him a different story. The officer's testimony was of course hearsay, but the Supreme Court did not rule on its admissibility. The witnesses in the present case are in exactly the same status as that of the officer in *Green*. The United States Supreme Court has not approved the introduction of such evidence.

*Green* approved the introduction of a witness' prior sworn testimony where his trial testimony contradicted his former testimony. The prior statement, like the statement in *Roberts, supra*, was given under circumstances which afforded the defendant unrestricted cross-examination. *Green* holds that the admission in evidence of the witness' prior testimony, which had been subjected to full and effective cross-examination, did not violate the accused's right of confrontation. I agree with the holding but submit that *Green* is inapposite to the present case. For additional discussion of the constitutionality of A.R.E. 803(25), see my concurring opinion in *Joe Henry Johnson* v. *State*, 292 Ark. 632, 732 S.W.2d 817 (1987).

Not one of the cases cited in the majority opinion is binding precedent for this case. This addition to our rule by the legislature is the only legislative act, court rule or precedent to hold that untested hearsay statements of such a nature are permissible. We have no prior decisions by this Court or the Court of Appeals interpreting this enactment. Therefore, we must look to other decisions for guidance.

Arkansas' statute, like those of quite a number of other states, was obviously molded from the Washington statute.

However, the differences are very great. The Washington statute requires the child victim to either: (1) testify at the proceeding outside the presence of the jury or (2) be unavailable as a witness. The statute, Revised Code of Washington 9 A.44.120, in pertinent part states:

> A statement made by a child when under the age of ten describing any act of sexual contact . . . is admissible in evidence in dependency . . . and criminal proceedings . . . if:
>
> > (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
> >
> > (2) The child either:
> >
> > > (a) Testifies at the proceedings [outside the presence of the jury]; or
> > >
> > > (b) Is unavailable as a witness;
> > >
> > > *Provided*, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

The Washington statute requires the victim to testify at the hearing or be unavailable as a witness, provided further that when the child is unavailable *there must be corroborative evidence of the act*. The Arkansas statute requires neither, if the majority interprets our rule correctly. Although the majority opinion seems to suggest that "any other corroborative evidence of the act" should be considered by the trial court in determining the trustworthiness of the child's hearsay statements, the Arkansas statute *does not require* corroborative evidence of the act whether the child is unavailable as a witness or not. All the other statutes that I have read are more restrictive and more narrowly defined than A.R.E. 803(25). See *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations*, 98 Harvard L. Rev. 806 (1985).

The Washington statute was considered in *State v. Ryan*, 103 Wash. 2d 165, 691 P.2nd 197 (1984). The trial court in the

*Ryan* case allowed the introduction of out-of-court hearsay statements very similar to those which were introduced into evidence in the case before us. The prosecution and defense stipulated that the victims, boys age four and five, were incompetent to testify. The trial court held that admissions by Ryan were sufficient to corroborate the hearsay statements. The Washington Supreme Court overturned the conviction. It is difficult to understand the reasoning of the court in *Ryan* since the three separate errors found in the trial court's application of the statute were: (1) that unavailability cannot be established by stipulation of incompetency; (2) that if the victims were, in fact, found to be incompetent, then their hearsay statements would be likewise unreliable and inadmissible; and (3) that the trial court erred in failing to find circumstantial guarantees of the reliability of the hearsay statements. Although the Arkansas act requires circumstantial guarantees of trustworthiness before the admission of such statements, the majority, in effect, dispenses with this requirement. Moreover, our rule does not require unavailability or proof of incompetency.

The *Ryan* court quoted with approval the cases of *Ohio* v. *Roberts*, 448 U.S. 56 (1980), and *California* v. *Green*, 399 U.S. 149 (1970). The court further explained their statute by stating:

> The statute requires a preliminary determination "that the time, content, and circumstances of the statement provide sufficient indicia of reliability. . . ." It requires the child to testify at the proceedings, or to be unavailable, and does not alter the necessary showing of unavailability. Neither unavailability nor reliability were shown prior to admitting the hearsay testimony.
>
> . . .
>
> Unavailability means that the proponent is not presently able to obtain a confrontable witness' testimony. It is usually based on the physical absence of the witness, but may also arise when the witness has asserted a privilege, refuses to testify, or claims a lack of memory. [Citations omitted.] Unavailability in the constitutional sense additionally requires the prosecutor to make a good faith effort to obtain the witness' presence at trial. *Roberts*, at 74.

I have discussed the Washington statute in detail because it exemplifies the recent efforts by various states to find a satisfactory and Constitutional solution to the problem of abuse of children. I contend that the Arkansas statute goes far beyond any other attempt to deal with this vexatious problem. I will briefly discuss the Arizona statute and some cases interpreting it. The statute reads:

§ 13-1416. Admissibility of minor's statement; notice.

A. A statement made by a minor who is under the age of ten years describing any sexual offense performed with or on the minor by another person or any act of physical abuse of the minor, which is not otherwise admissible by statute or court rule, is admissible in evidence in any criminal or civil proceeding if both of the following are true:

1. The court finds, in an in camera hearing, that the time, content and circumstances of the statement provide sufficient indicia of reliability.

2. Either of the following is true:

(a) The minor testifies at the proceedings.

(b) The minor is unavailable as a witness, provided that if the minor is unavailable as a witness, the statement may be admitted only if there is corroborative evidence of the statement.

On April 15, 1986, the Arizona Court of Appeals decided the case of *State* v. *Superior Court, Pima County and Skala*, 719 P.2d 283 (Ariz. App. 1986). The court affirmed the trial court's exclusion of the hearsay testimony of the mother concerning the child's statement which occurred two days after the alleged sexual offense by the three year old child's father. The case was remanded on the grounds that the trial court did not make an in chambers independent determination of each hearsay witness' testimony for trustworthiness. The Arizona Court of Appeals stated: "In some cases, the trial court may conclude that all statements are unreliable, but that determination must be independently made as to each statement offered and/or each witness called to so testify."

The Arizona statute was subsequently struck down in *State v. Robinson*, 235 P.2d 801 (Ariz. 1987), in which the Supreme Court of Arizona held the statute to be unconstitutional as infringing upon the Court's authority to make procedural rules for the judiciary. The Court stated:

> Although we have previously recognized consistent statutory additions to the rules of evidence, . . . the reach of our rulemaking authority and the function of the hearsay rules, taken together, severely limit the legislature's authority to manipulate the hearsay rules, particularly in criminal cases where confrontation rights are constitutionally protected. . . . [T]he hearsay rules are at the core of the judicial function: defining what is reliable evidence and establishing judicial processes to test reliability. Under basic separation of powers principles, these judicial functions are separate and different from legislative powers.

The Arkansas version of the child hearsay statute should likewise be declared unconstitutional.

It is time we returned to the basic constitutional concept that an accused is considered innocent until proven guilty beyond a reasonable doubt. I am in complete accord with the public demand for swift and sure punishment of child molesters. However, in our zeal to rid society of such individuals we must not lose sight of the rights of others. We ought not to tear down our well-established institutions before we decide what we will replace them with. By the same logic a person should not be adjudged guilty by the untested hearsay testimony of any witness. The foundation of the doctrine prohibiting the introduction of hearsay is to prevent a conviction on untested statements made without the safeguards of confrontation and a determination of trustworthiness. Sir Walter Raleigh was convicted on hearsay testimony which had been retracted before his conviction. This is the type of trial the Sixth Amendment to the Constitution of the United States sought to prohibit. If the Amendment is bad then let it be stricken by the people instead of the courts.