577 So.2d 956 (1991)
Martin David KOPKO, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1497.
District Court of Appeal of Florida, Fifth District.
February 14, 1991.
On Motion for Rehearing and Certification April 18, 1991.
*957 Christopher A. Grillo, Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Judy Taylor Rush, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
This case brings to our attention an evidentiary problem peculiar to prosecutions for sexual battery perpetrated on children  admission of repetitive hearsay testimony recounting the child victim's out-of-court statements describing the criminal sexual acts.
The child victim in this case was nine years old when she reported lewd acts and sexual battery allegedly perpetrated by her stepfather, the appellant, David Kopko. Appellant had been married to the child's mother for approximately three years. Mrs. Kopko also had a son from her former marriage, and she and appellant together had a daughter.
Mrs. Kopko testified that, on June 21, 1987, she informed her older daughter, the victim, that she had decided to leave the appellant. The child then told her mother of an incident involving appellant that had occurred around the previous Halloween. She related that appellant had taken off his clothes, climbed into the shower with her and "stuck his private in [her] butt." She also stated that sometimes while her mother was away from the house, the appellant would call her into the bedroom, remove his clothing, place her on the bed and move around on top of her. The incidents always ended with her wriggling out from underneath him and leaving the room. She reported that the last such incident had occurred within a month of these revelations to her mother.
On or about June 24, 1987 appellant's wife left the marital home, taking all three children. The following week, mother and child met with a police officer and made a statement concerning the appellant's alleged sexual abuse. Two days later, the child made a videotaped statement concerning the above-described incidents in the form of an interview with a counselor for the Child Protection Team ("CPT"). The child was also examined by a CPT physician, but no objective evidence of abuse was found. Appellant subsequently sued his wife for divorce and requested custody of his natural daughter. On October 26, 1987, appellant was charged with sexual battery and lewd assault.
Prior to trial, the state filed a motion seeking admission at trial of the CPT counselor's videotaped interview with the child. In its motion, the state described the testimony on the tape and summarily stated that "the circumstances surrounding the making of the statement demonstrate it is reliable."[1] Prior to trial, the defense challenged both the sufficiency of the notice and the admissibility of the videotape, *958 based on hearsay. The court found the notice to be adequate and held a hearing to determine admissibility under the provisions of section 90.803(23), Florida Statutes (1987). At the hearing, the state argued that the statements made by the child victim contained the requisite indicia of reliability because: (1) the incidents were disclosed to the mother as soon as the child found out they were leaving her stepfather; (2) the questions posed by the interviewer were not leading;[2] (3) the child had no motive to lie; (4) the statements were corroborated in part by the mother's testimony; and (5) the statements made by the child were consistent with other statements she had given. Appellant's counsel argued that the videotaped statements were unreliable because of the time lapse between the incidents and the time they were reported, and because of the further delay between the report and the interview. He contended there was a motive to lie because of the disputes between the victim and the appellant about discipline, and, more important, because the child and her mother were anxious to keep custody of the child's little sister. He also pointed out that the child appears to be sophisticated about sexual matters so that her story does not depend on her having experienced the events. According to defense counsel, the child's testimony was obviously coached. Counsel also pointed out that there was no physical evidence to corroborate the statements made by the child. Finally, the videotape was objected to as "cumulative" and "prejudicial".
In finding the videotape admissible under section 90.803(23), Florida Statutes (1987), the trial court stated:
I find that it's clear from the tape that the victim is able to testify competently. She recites the facts well, her memory seems clear; she was not unduly prompted by the interviewer. The circumstances are relaxed, she seems relaxed, very forthright with the interviewer in answering the questions and answers the questions fully and concisely.
Further, the content of the tape coincides with the testimony that the victim gave as part of the hearing. Further, it coincides with the statement related by her mother after the, or at the first initial reporting of this matter.
The court, nevertheless, found that the prejudicial value of the videotape outweighed its probative value and refused to allow it to be presented to the jury. The court said:
Unless during the testimony of this trial the testimony of the victim is ostensibly less, then the Court may reconsider that motion, possible motion by the state, the motion of the videotape at the time if I deem its probative value becomes more important.
But right now it appears to me the the [sic] victim is able to testify clearly to the facts that have occurred and therefore the probative value would be minimal in admitting the tape.
In response to the court's ruling, the state moved for the court to allow the CPT counselor who performed the interview to testify to the statements made by the child during the interview. For some reason not clear on the record, the trial court elected to allow the CPT worker who conducted the videotaped interview to testify.
At trial, the state called four witnesses: the child, the child's mother, the CPT counselor and the CPT physician who examined the child. The testimony of the child victim, who was then approximately two years older than when the videotape interview was made, was clear, concise and very similar to the statements she had previously made to her mother, the CPT counselor and the physician. The testimony of the CPT counselor, over renewed hearsay objection, related the events of the interview, recounting once again for the jury virtually the same version of events the child had *959 given at trial. The counselor was not qualified as an expert witness and gave no evidence beyond the substance of the statements that had been made. The CPT physician also recounted for the jury, in slightly less detail, the child victim's description of her stepfather's sexual abuse. The doctor further testified that she found no evidence of anal penetration, scarring, fissures or other objective symptoms of abuse.
This case is further complicated because, during defense counsel's cross-examination of the CPT counselor, he had her acknowledge, apparently for impeachment purposes, that the videotape of the interview with the child would be "more accurate [than the counselor's own recollection] and the best evidence of what really went on during that session." Thereafter, on the state's motion, the court ruled that the defense had "opened the door" and allowed portions of the videotaped interview to be shown.
Appellant testified at trial, denying all charges. He described the family situation, including the fact that his ex-wife was approximately eight years his senior and they had been married when he was nineteen or twenty, shortly after her divorce from her first husband. He testified that he and his ex-wife had fought regularly during their marriage about discipline, the children and money. He maintained that his ex-wife would do anything to prevent him from obtaining custody of their youngest daughter.
The jury found appellant guilty of both sexual battery and lewd assault on the child. Appellant, who had no prior criminal record, was sentenced to life imprisonment, with a minimum mandatory sentence of twenty-five years on the sexual battery count; he was given fifteen years incarceration to be served concurrently on the lewd assault.
On appeal, appellant contends that the admission of the hearsay statements of the child through the CPT counselor, the CPT physician, and the videotape was reversible error.[3] Appellant initially complains that the statutory notice required under section 90.803(23) was inadequate. We agree that the state's attempt to comply with the statutory notice requirements was defective because the state failed to identify the circumstances surrounding the statement that indicate reliability. By merely adverting to the videotape, the state left the defense to guess what factors the state would argue to establish trustworthiness. Because, however, the arguments actually made by the state were discernible from viewing the tape and because none of the state's reliability arguments even approach surprise, we do not see that this defective notice could constitute reversible error.[4]Distefano v. State, 526 So.2d 110 (Fla. 1st DCA 1988).
Appellant also urges that the testimony of the CPT counselor and the videotape of the counselor's interview with the child did not meet the statutory requirements of "trustworthiness" sufficient to justify admission in evidence. Here, the trial court viewed the videotape and concluded that the time, content and circumstances of the statement, as well as the other factors referenced in the statute, provided adequate safeguards of reliability. In reaching its determination, the trial court considered indicia both intrinsic to the statement and factors extrinsic to the making of the statement.[5] Although the *960 court's evaluation of the child's demeanor indicated candor, the circumstances surrounding the giving of the statement are more problematical. This child had already reported the alleged sexual battery. The whole purpose of the interview, which the videotape demonstrates the child clearly knew, was for her to retell her story of sexual abuse. There had been ample time for coaching, the child appeared knowledgeable about sexual matters, she had an apparent motive to lie[6] and she was not fond of her stepfather. The reliability of the videotaped statement to the CPT worker is a judgement call and we cannot say the trial court abused his discretion in concluding the hearsay statements of the child were reliable enough to be admitted.[7]
The real problem in this case, because the child victim did testify and because her testimony was so closely consistent with the trial testimony, is why the CPT counselor or doctor[8] should have testified at all about what the child had said out-of-court, or why the tape was played. What the advent of legislation like section 90.803(23), Florida Statutes, has done is to create an invitation to repetitive testimony consistently prohibited in Florida prior to the amendment. E.g., Brown v. State, 344 So.2d 641 (Fla. 2d DCA 1977); Allison v. State, 162 So.2d 922, 924 (Fla. 1st DCA 1964).[9] The statute itself suggests at least one repetition is permissible by providing that the victim's hearsay statements are admissible if the child testifies. By having the child testify and then by routing the child's words through respected adult witnesses, such as doctors, psychologists, CPT specialists, police and the like, with the attendant sophistication of vocabulary and description, there would seem to be a real risk that the testimony will take on an importance or appear to have an imprimatur of truth far beyond the content of the testimony. It is worrying to see, in a case such as this one, with virtually no evidence *961 to corroborate the testimony of either the alleged victim or the alleged abuser, that only the victim's version of events is allowed to be repeated through different (professional) witnesses.
In Griffin v. State, 526 So.2d 752 (Fla. 1st DCA 1988), the court was faced with a testimonial pattern similar to that of the present case. Even though a videotape of the child's statement was in evidence, four adults (both parents, the baby-sitter, and a police detective) also testified about what the child victim told them about the assault. In that case, the trial court's failure to determine the four year old child was competent at the time the statements were made was the basis for reversal; however, in finding the error harmful the court relied on the repeated introduction of the child's statements. Id. at 759.
The Third District Court of Appeal expressed similar concern in Lazarowicz v. State, 561 So.2d 392 (Fla. 3d DCA 1990). After finding that a 17 year old girl's prior consistent statements concerning a sexual battery by her father were erroneously admitted, the court observed that the "parade" of witnesses who testified about these statements might have given credence to the victim's testimony, which was especially important because the credibility of the father versus the daughter was crucial. Id. at 395.
In contrast, the First District Court of Appeal, in Salter v. State, 500 So.2d 184 (Fla. 1st DCA 1986), found that the admission of a child victim's statements to a CPT counselor without making the requisite findings under section 90.803(23) was harmless error precisely because the child testified at trial and both the child's mother and a friend testified to the child's statements immediately after the incident. Salter is a reflection of the overwhelming view that cumulative or repetitive evidence cannot be harmful error.[10]
Another case similar to Salter is Woodfin v. State, 553 So.2d 1355 (Fla. 4th DCA 1989), rev. denied, 563 So.2d 635 (Fla. 1990). There six witnesses were allowed to testify concerning the out-of-court statements of the two child victims of sexual battery. Although the trial court had failed to make the requisite findings to authorize admission of this hearsay evidence, the Fourth District Court affirmed, noting that the victims' out-of-court statements largely "dovetailed" with their trial testimony and thus were "merely cumulative." Id. at 1356, 1359.
This problem of multiple recitations of the child victim's out-of-court statements has been squarely addressed by the supreme court of at least one state. In Smart v. State, 297 Ark. 324, 761 S.W.2d 915 (Ark. 1988) the Supreme Court of Arkansas shrugged off the defendant's argument that he was prejudiced when, in addition to the child, the child's mother, a deputy sheriff and a family friend were all allowed to testify concerning the child's out-of-court statements under the Arkansas equivalent of section 90.803(23). The court pointed out that the hearsay exception does not establish an "either/or" scheme of admissibility and that the trial court has the discretion to control admission of cumulative evidence.[11]
*962 Although, in this case, we cannot say that the trial court erred in ruling the child's out-of-court statements were admissible under section 90.803(23), Florida Statutes, we nevertheless conclude that it was reversible error to utilize this hearsay exception as a device to admit prior consistent statements. In reaching this conclusion we are convinced the important function of section 90.803(23), Florida Statutes is in no way impaired. The purpose of the child victim exception to the hearsay rule is to salvage potentially valuable evidence of abuse from children who may, for many reasons, be unable or unwilling to give their evidence at trial to a jury in the same way an adult would be expected to do. The age of the child victim, the limited understanding of a child about what has happened to him or her, their lack of verbal skill, their lack of comprehension and fear of the trial process, as well as other factors, all conspire to make child victims poor candidates for in-court testimony about the crimes perpetrated on them. The hearsay exception embodied in section 90.803(23) is designed to help remedy this problem by providing an avenue for admissibility of the out-court-statements. Like most other hearsay exceptions, the child abuse exception is born out of necessity.
The statute provides multiple mechanisms designed to safeguard against the key defect of hearsay  the inability of the defendant to hear the statement when made and to cross-examine the speaker at that time. Elaborate tests for reliability are specified. Moreover, the child must either testify at trial to provide the defendant an opportunity to cross-examine or, if the child is unavailable for cross-examination, there has to be other corroborating evidence of the crime. Notably, nowhere in the statute or in any of the legislative history we have been supplied is there any discussion of the problem of prior consistent statements bolstering the victim's in-court testimony. If the child abuse hearsay exception were meant to abrogate prior caselaw forbidding the use of repetitious, prior statements to bolster in-court testimony, some expression of that intent should exist. In the absence of such an expression of intent, it appears the long-standing proscription against introduction of prior consistent statements still has force. Wise v. State, 546 So.2d 1068 (Fla.2d DCA), rev. denied, 554 So.2d 1169 (Fla. 1989). Accordingly, we hold that where a child victim is able at trial to fully and accurately recount the crime perpetrated on him or her, it is error also to allow the introduction of prior consistent statements made by the child. Where the child's out-of-court statements are needed to provide evidence of any aspect of the crime or related events which the testifying or unavailable child cannot adequately supply, such out-of-court statements are available pursuant to section 90.803(23).
As applied to the present case, the testimony of the CPT worker and the CPT physician was purely an adult's reiteration of the child's prior statements consistent with her trial testimony, and, as such, admission of the testimony was reversible error.
*963 As Florida courts have long expressed,[12] overbroad use, as occurred in this case, of the statutorily authorized device for admission of a child victim's out-of-court statements creates unfair prejudice to a criminal defendant. We can find no legal basis to conclude that section 90.803(23), Florida Statutes, was designed to be used for introduction of multiple instances of testimony repeating a child's prior consistent statements, and on this record, we cannot conclude the repetitious testimony did not influence the jury's verdict. Appellant is entitled to a new trial in which, through whatever evidentiary devices are available, the child victim's version of events can be submitted by the state to the jury once  unless the defense opens the door to more.
Appellant also contends that he was incorrectly sentenced because the primary offense scored was sexual battery on a child under 12, which is a capital felony for which no scoresheet is used. The primary offense at conviction should have been the lewd assault. The state concedes this error, which is moot in light of our reversal of both convictions.
REVERSED and REMANDED for a new trial.
W. SHARP, COWART and GRIFFIN, JJ., concur.

ON MOTION FOR REHEARING, REHEARING EN BANC OR CERTIFICATION
The state's Motion for Rehearing and Rehearing En Banc is denied except that we grant the state's request that we certify to the supreme court the following as a question of great public importance having a great effect on the proper administration of justice in this state, pursuant to Florida Rule of Appellate Procedure 9.125:
IN A CASE IN WHICH THE CHILD VICTIM OF A SEXUAL OFFENSE TESTIFIED FULLY AND COMPLETELY AT TRIAL AS TO THE OFFENSE PERPETRATED UPON HIM OR HER, CAN IT CONSTITUTE REVERSIBLE ERROR TO ADMIT, PURSUANT TO SECTION 90.803(23), FLORIDA STATUTES, PRIOR, CONSISTENT OUT-OF-COURT STATEMENTS OF THE CHILD WHICH WERE CUMULATIVE TO THE CHILD'S IN-COURT TESTIMONY OR MERELY BOLSTERED IT?
NOTES
[1] The state described the hearsay testimony to be introduced as follows:

6. That during the interview the child stated that her stepfather fondled her vagina, laid on top of her, and exposed himself to her. The episodes began between September and December 1986. While she was in 3rd grade and when the family moved into the yellow house [sic]. [The child] stated that each time her mother would go to work or to the store her stepfather would approach her, fondle her after he had either locked [the child's] 13 year old brother in his own bedroom or himself and [the child] in the parents' bedroom. Her stepfather would be without clothes during the entire time; however, she always had hers on except for the first time. On the first occasion she was in the shower and her stepfather came in and anally penetrated her. She told him that her body was not "mature enough for sex." She told him to go find an 18 year old, 19 year old or 30 year old to have sex with. She was told if she told anyone he would beat her up.
[2] "Leading" is not a problem in this case because the child knew the purpose of the interview was to discuss the allegations. The videotape shows that, after some small talk, the CPT counselor asked the child if she knew why she was there and she said her mother told her she was supposed to be telling what her dad did to her. The counselor then asked, "Do you know how long ago it was when he started whatever?" The child then related the whole story.
[3] Appellant has also raised other issues on appeal in which we find no merit.
[4] The defense also raises the fact that the state filed only a notice of intent to use the videotape, not the statements to the CPT worker. Because, however, the videotape is the record of the CPT worker's only interview with the child, we cannot see that the failure to file a separate notice violated the requirements of the statute.
[5] Recently, in deciding whether the admission of a child's hearsay statements satisfied the requirements of the confrontation clause of the United States Constitution, the United States Supreme Court, in Idaho v. Wright, ___ U.S. ___, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), concluded that extrinsic factors may not be taken into account. In the present case, however, the child victim testified. It is not entirely clear that admission of a prior consistent out-of-court statement by a testifying witness under one of these child abuse exceptions to the hearsay rule meets the requirements of the confrontation clause or of constitutional due process. See California v. Green, 399 U.S. 149, 158-164, 90 S.Ct. 1930, 1935-1938, 26 L.Ed.2d 489, 497-501 (1970); Lilly, Notes on the Confrontation Clause and Ohio v. Roberts, 36 U.Fla.L.Rev. 207, 225-229 (1984). See also Perez v. State, 536 So.2d 206 (Fla. 1988), cert. denied, 492 U.S. 923, 109 S.Ct. 3253, 106 L.Ed.2d 599 (1989). But see People v. Bastien, 129 Ill.2d 64, 133 Ill.Dec. 459, 541 N.E.2d 670 (1989). In any event, this issue was not raised on appeal.
[6] At one point on the videotape she describes a restraining order requiring her father to stay away from the family. When asked if she was pleased, she said she was because her mom didn't want him to take her little baby sister.
[7] Review of the videotape confirms the trial court's observation that the child was not unduly prompted. See n. 2, supra.
[8] On this record, we do not agree with the state that the doctor's testimony qualifies for the "medical diagnosis or treatment" hearsay exception. § 90.803(4), Fla. Stat. There is no indication this exam was for any purpose other than to find physical evidence corroborating the allegations of abuse. See Bradley v. State, 546 So.2d 445 (Fla. 1st DCA 1989); Begley v. State, 483 So.2d 70 (Fla. 4th DCA 1986). But see Sampson v. State, 541 So.2d 733 (Fla. 1st DCA 1989).
[9] It is unclear whether the true basis for excluding the testimony of third persons as to prior consistent statements of a complaining witness is that it is hearsay, or whether there is an independent concern about the use of repetitious statements made over time to bolster credibility. Nevertheless, as Wigmore points out, "hearsay" is where this issue has come to rest. 4 Wigmore, Evidence § 1123 at 254 (1972). Although some opinions of Florida courts considering the inadmissibility of prior consistent statements never even mention the word "hearsay", e.g., Van Gallon v. State, 50 So.2d 882 (Fla. 1951), the old Florida cases speak in terms of hearsay. Custer v. State, 159 Fla. 574, 34 So.2d 100 (1947); Ellis v. State, 25 Fla. 702, 708, 6 So. 768, 770 (1889). See also Holliday v. State, 389 So.2d 679 (Fla. 3d DCA 1980). Notably, some Florida courts describe the objection to prior consistent statements in dual terms: hearsay and the undesirability of bolstering credibility of trial testimony. See Perez v. State, 371 So.2d 714, 716-717 (Fla. 2d DCA 1979). Under the present Florida hearsay rule, section 90.801(2), Florida Statutes, prior consistent statements, when admissible, are classified as non-hearsay. 3 Hughes, Florida Evidence Manual § 346 at 21 (1975). The statements under review in this case are hearsay because they do not qualify as non-hearsay under the rule. The hearsay statements are nevertheless excepted from the rule of inadmissibility of hearsay under section 90.803(23). Such prior consistent statements of child victims clearly were inadmissible prior to enactment of section 90.803(23), Florida Statutes, to bolster and lend credence to their subsequent testimony. See, e.g., Wise v. State, 546 So.2d 1068, 1070 (Fla. 2d DCA), cert. denied, 554 So.2d 1169 (Fla. 1989).
[10] Courts just do not find reversible error in the admission of cumulative evidence. E.g., Westley v. State, 416 So.2d 18 (Fla. 1st DCA 1982); Fern v. Krantz, 351 So.2d 1144 (Fla. 3d DCA 1977); Perkins v. State, 779 S.W.2d 918, 923 (Tex. App. 1989); State v. Green, 603 S.W.2d 50 (Mo. App. 1980). At most, the cumulative issue is mentioned as a makeweight argument where reversible error on some other basis has already been identified. See State v. Smith, 573 So.2d 306, 308-310 (Fla. 1990); Francis v. State, 512 So.2d 280 (Fla.2d DCA 1987). In any event, we question whether the problem presented is really a question of cumulative evidence. This is not a circumstance where many witnesses observed a single event or heard a single utterance and the court must decide how many recitations of the single perceived event are excessive. The problem presented here is that each witness is testifying about separate events  prior consistent statements made only to themselves.
[11] In Cogburn v. State, 292 Ark. 564, 732 S.W.2d 807 (1987) and Kester v. State, 303 Ark. 303, 797 S.W.2d 704 (1990), the Arkansas Supreme Court has taken a strange direction where the form of hearsay involved is a videotape of the child's statements made to a social worker about the alleged sexual abuse. In these cases, the court has held that the social worker is free to testify about the child's out-of-court statements but the videotaped record of the statements is inadmissible. Under Arkansas law (which is like Florida law), there is a special statutory procedure for allowing the child to testify by videotape in lieu of in-court testimony where the adverse effect on the child of such an ordeal is demonstrated. Because the videotaped statements given to social workers are not taken in compliance with that procedure, the Arkansas Supreme Court has decided the videotapes cannot be admitted in evidence. The Arkansas Supreme Court expressed concern that the introduction of a videotape of the child's statement and introduction of the child's videotaped testimony would mean the child was testifying twice. Cogburn, 732 S.W.2d at 809. Although the Arkansas Supreme Court seems to have solved the problem of introduction of repetitious videotaped hearsay statements, as the dissent in Kester points out, by focusing on the medium (videotape) rather than on the message (hearsay), the court seems to have confused two distinct statutory procedures. Kester, 797 S.W.2d at 707 (Hays, J., dissenting). In any event, it is clear that whether the child testified live at trial or testified by videotape, the Arkansas Supreme Court would permit the social worker who took the inadmissible videotaped statement to testify about what the child said out-of-court even if the child's trial testimony and out-of-court statements were completely consistent. Kester, 797 S.W.2d at 706; Cogburn, 732 S.W.2d at 810.
[12] E.g., Allison v. State, 162 So.2d at 924. For a contrary view of the potential for prejudice, see State v. Parish, 79 N.C. 610, 612-614 (1878), quoted in 4 Wigmore, Evidence § 1124 at 258 (1972).