Gary Dean FOOTS et al *v.* STATE of Arkansas

CR 74-72                              528 S.W. 2d 135

Opinion delivered September 15, 1975

*John E. Hooker, Eugene Hunt* and *Robert F. Morehead,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The five appellants, charged with first degree rape, were found guilty by a jury and were sentenced to imprisonment for 30 years. Their six points for reversal must be separately considered.

I. The proof is sufficient to support the convictions. At about 1:30 a.m. on June 24, 1973, the prosecutrix and another married woman, traveling by car, were trying to find their way back to a camp on the Arkansas River, to rejoin their husbands upon a fishing trip. They were stopped at gun point by the five defendants, who were in another car. According to the State's testimony, the five men all raped the prosecutrix, in turn. The State's proof also showed that at least four of the defendants, after their arrest, admitted having had intercourse with the prosecutrix but insisted that it was with her consent. It was for the jury to say which version was the true one.

II. The deputy prosecuting attorney, in his opening statement, told the jury that the State's evidence would show that four of the defendants made oral confessions to the authorities. The court overruled defense counsel's request for a mistrial, stating that the court would instruct the jury that

arguments and statements by attorneys are not evidence, and adding that "you [the jury] will disregard that statement at this time." During the trial Officer Enderby testified that four of the defendants had stated that they had had sexual intercourse with the prosecutrix (two of them saying that a gun was used).

It is now argued that the oral statements were admissions rather than confessions, so that the opening statement was misleading. Even so, the court's ruling was right. A mistrial is such a drastic measure that it is appropriate only if justice cannot be served by a continuation of the trial. *Back* v. *Duncan*, 246 Ark. 494, 438 S.W. 2d 690 (1969). It frequently happens that an attorney, in good faith, goes too far in telling the jury what he expects the testimony to show. Obviously a mistrial cannot be declared every time an opening statement is challenged by the other side. Here the trial court promptly instructed the jury to disregard the statement "at this time." At the close of the case the court gave AMI 101, which told the jury that opening statements are not evidence and should be disregarded if they have no basis in the evidence. AMI Civil 2d, 101 (1974). There is no indication that the prosecutor's remark was made in bad faith. We conclude that the court's admonitions to the jury were sufficient to set the matter straight.

III. During the trial the defense sought to introduce the testimony of two polygraph examiners, H.G. Kelley and police sergeant Don Wall. The testimony was offered pursuant to pre-trial stipulations which recited that the defendants "will submit to polygraph tests" and that "any and all polygraph examination results taken" by the defendants may be introduced in evidence. The trial judge refused to allow Kelley's testimony on the ground that his examinations had been made before the stipulations and refused to allow Wall's testimony on the ground that he was not a qualified expert witness in polygraphics.

We think the trial judge correctly interpreted the stipulation, which contemplated tests to be made thereafter. *Lang* v. *State*, 258 Ark. 504, 527 S.W. 2d 900, also decided today. Hence Kelley's testimony was properly excluded. Of-

ficer Wall testified that he was an intern in polygraphics, not a licensed examiner, and that his tests were reviewed by his supervisor. See Ark. Stat. Ann. § 71-2207 (Supp. 1973). We find no abuse of the trial court's wide discretion in determining the qualifications of an expert witness. *Fireman's Ins. Co.* v. *Little,* 189 Ark. 640, 74 S.W. 2d 777 (1934). Furthermore, there was no proffer of either witness's testimony; so we have no assurance that upon a new trial it would be helpful to the defense.

IV. It is argued that the trial judge should have declared a mistrial when it was discovered that the witness room had not been closely guarded and that one or more outsiders had gone into that room. When the matter was brought up by defense counsel the court took a recess and heard all the testimony that was offered. As in *Pleasant* v. *State,* 15 Ark. 624 (1855), nothing prejudicial to the defense was shown. In fact, counsel were evidently satisfied and did not even ask that the court take any action; so there is nothing before us for review.

V. It is argued that the court should not have sent the jury back for further deliberation when they reported at midnight that they were hopelessly deadlocked at 11 to 1. Again there is nothing before us, because no objection was made to the court's action.

VI. During the last ten days before the case was to be tried several motions were filed asking that the jury panel be quashed, on constitutional grounds. On the day before trial defense counsel asked that Judge Williams, who had appointed the jury commissioners, disqualify himself from hearing the motions. Judge Williams promptly granted that request but did not postpone the trial. Thereafter Judge Baim was designated to hear the motions. At the conclusion of a great deal of testimony the motions were denied.

We find no violation of the defendants' constitutional right to be tried by jurors who were selected with fairness and impartiality. The defendants, who are all black, failed to show systematic exclusion of blacks from juries in Jefferson county or any other constitutional defect in the selection of the jury.

There were seven jury commissioners, four white and three black. According to the proof, they worked long and diligently in an effort to make an impartial selection of qualified jurors. They eventually selected 1,250 names, which were placed in the jury wheel from which the actual panel was drawn by chance.

For reversal counsel rely almost entirely upon cases such as *Cassell* v. *Texas* 339 U.S. 282 (1950), in which the court held that it is the duty of jury commissioners to familiarize themselves with the qualifications of eligible jurors in the county, without regard to race or color. In *Cassell* the proof showed that blacks had been systematically excluded from grand juries for several years. The reason was that the all-white jury commissioners had selected jurors from among their acquaintances, and they knew no eligible Negroes. In that fact setting the court said that the commissioners were under a duty to familiarize themselves with eligible jurors.

That case bears no resemblance to this one. Here three of the jury commissioners were black. The commissioners did not limit the selection process to their acquaintances. No systematic exclusion of blacks is shown. To the contrary, the list of 1,250 names appears to be fairly representative as a cross-section of persons qualified for jury service. Counsel's argument rests almost entirely upon the jury commissioners' admission that they did not affirmatively seek to broaden their knowledge of prospective jurors in the county. Such action, however, was unnecessary, for no constitutional defect in the actual selection is shown. See *Mitchell* v. *Stephens,* 8th Cir., 353 F. 2d 129 (1965), where the testimony adduced by the defense was much stronger than it is here, but the court upheld the method of selection. We find it unnecessary to discuss this issue at length, for the extensive proof simply fails to show any constitutional infirmity in the selection of the jury.

Affirmed.