Cite as 2022 Ark. App. 456

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-22-112

| | | |
|---|---|---|
| JOHN KRIEGER | | **Opinion Delivered** November 9, 2022 |
| | APPELLANT | APPEAL FROM THE HOWARD COUNTY CIRCUIT COURT [NO. 31CR-19-70] |
| V. | | |
| | | HONORABLE CHARLES A. YEARGAN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant John Krieger was convicted in a jury trial of second-degree sexual assault committed against his eight-year-old step-granddaughter, Minor Child, and he was sentenced to ten years in prison. On appeal, Krieger argues that the trial court erred in denying his motion to suppress the results of a polygraph test,[1] notwithstanding Krieger's written stipulation to the admission of the test results prior to his taking the test. Krieger also argues that the trial court erred in excluding the testimony of his expert witness who was called to critique the manner in which the forensic interviews of Minor Child were conducted. We affirm.

---

[1]A polygraph test is also sometimes referred to herein as a Computer Voice Stress Analyzer (CVSA).

The sexual assault was alleged to have been committed in Krieger's home while Minor Child was sitting on Krieger's lap on February 14, 2019. On February 19, 2019, Minor Child's father, Scott Lovelis, who is Krieger's stepson, drove Krieger in his truck to the police station. While there, Krieger was given his *Miranda* warnings, and he gave a statement to the police wherein he denied sexually assaulting Minor Child. Krieger then signed a written stipulation, which was also signed by the polygraph examiner and the prosecuting attorney. The written stipulation provided that Krieger agreed to voluntarily submit to a CVSA regarding his knowledge of the alleged offense and agreed to stipulate that the results of the test shall be admissible at any pretrial hearing or trial. Krieger also signed a release, which was signed by the polygraph examiner, wherein Krieger agreed to "voluntarily, without duress, coercion, promise, reward or immunity, submit to examination by the Voice Stress Analysis Truth Verification technique[.]" Krieger then submitted to the CVSA, and the examiner, Investigator David Shelton, detected deception by Krieger when answering questions related to sexual abuse committed against Minor Child.

Prior to trial, Krieger filed a motion to suppress the results of the CVSA on the grounds that his consent to the test was coerced and therefore involuntary. In the motion, Krieger asserted that on February 19, 2019, Minor Child's father, Scott Lovelis, came to Krieger's home and asked him to go for a ride in his truck. Krieger alleged that once Krieger was in the truck and away from Krieger's home, Lovelis produced a handgun, busted out the front windshield of the truck with his fist, and demanded that Krieger immediately go to the police station and take a polygraph test. Krieger further alleged that Lovelis threatened to

2

cut Krieger into "a million pieces" if he did not comply and that Krieger, in fear for his life, agreed to take the test. Krieger asserted that he was threatened and coerced into agreeing to take the test without the benefit of an attorney. Krieger stated that, although he signed a stipulation agreement as to the admissibility of the test and a release stating that he was not coerced or under duress, the law enforcement involved should have been alerted that something was amiss when the father of the alleged sexual-assault victim delivered Krieger to the police station and presumably would later drive him home. For these reasons, Krieger asked that the trial court prohibit any mention of the CVSA at trial.

The trial court held a hearing on Krieger's motion to suppress the results of the CVSA. Sheriff Bryan McJunkins testified that on the day the CVSA was administered, Lovelis and Krieger arrived at the police station, and Lovelis told him that Krieger was ready to give his side of the story and was willing to take a test. Lovelis then left the office.[2]

Sheriff McJunkins testified that he spoke with Krieger and that the purpose of the visit was to determine whether Krieger was going to give a statement and was willing to take a polygraph test. Sheriff McJunkins described Krieger as being calm and stated that there was no indication that he had been threatened or was in distress. Krieger informed Sheriff McJunkins that he was formerly in law enforcement. Sheriff McJunkins stated that they discussed Krieger's knowledge of his rights and that he was not under any pressure to make a statement. Officer McJunkins stated that he told Krieger, "You don't have to talk to us if

---

[2]The record shows that after Lovelis left Sheriff McJunkin's office, Krieger had no further contact with Lovelis that day.

3

you don't want to[,] . . . [but] if you want to talk to us and tell your side of the story, we can take your statement." According to Officer McJunkins, Krieger kept saying, "I want to give a statement, I want to get this out if the way," and Krieger agreed to give a statement and take a polygraph test.

On cross-examination, Officer McJunkins testified that he could tell that Krieger was somewhat anxious and that Krieger had mentioned that there were some words exchanged between Krieger and Lovelis. Officer McJunkins also testified that Lovelis had a reputation in the community as a temperamental person. Nonetheless, Sheriff McJunkins never saw any friction between the two men that day or saw any need to deescalate a situation.

Investigator Joey Davis, who conducted the Mirandized interview with Krieger, testified next. Investigator Davis testified that when Krieger and Lovelis arrived at the police station that day, Lovelis told him and Sheriff McJunkins, "He's here to talk to y'all, please treat him with respect and be good to him. He agreed to take the test." Investigator Davis did not see any threatening behavior by Lovelis. Investigator Davis stated that he went over the waiver-of-rights form with Krieger and that Krieger initialed each of his rights, signed the form, and agreed to give a statement. During the process of going over the waiver-of-rights form, Krieger offered that he had formerly been a police officer for ten years and he indicated that he knew how "this process and these cases work." Krieger indicated that during his time in law enforcement, he had conducted numerous interviews with criminal suspects. Investigator Davis stated that Krieger appeared very calm and relaxed.

Portions of the interview were played during the suppression hearing.  At one point during the interview, Krieger stated that Lovelis "took the gun out and laid it and I said, 'go ahead,' . . . I'm not gonna beg you not to shoot me or yourself or whatever."  Investigator Davis then stated, "Before we go any further, I want you to know you don't have to talk to me."  Krieger responded, "I know that," and the interview continued.  During the interview, Krieger was asked about the allegations of sexual abuse that occurred on February 14, 2019, and he denied the allegations.  At the conclusion of the interview, Investigator Davis arranged for Investigator David Shelton to administer the CVSA in the same location where the interview had been conducted.  According to Investigator Davis, he drove Krieger home from the police station at the end of the day.

Investigator Shelton testified that he has been a certified administrator of CVSAs for twelve years and had administered approximately 120 tests.  Investigator Shelton stated that he went over the stipulation agreement with Krieger and explained to Krieger that if he signed it, the CVSA could be used in court.  Investigator Shelton indicated that Krieger appeared to have no trouble understanding the stipulation agreement and that he signed it.  Investigator Shelton also went over the release form with Krieger, which Krieger indicated that he understood and signed.  After Krieger signed the forms, Investigator Shelton administered the CVSA.  During their interaction, Krieger never indicated to Investigator Shelton at any time that he was afraid or was under duress.

Finally, Krieger himself testified at the suppression hearing.  Krieger stated that on the morning of February 19, 2019, Lovelis came to his house and asked him to go for a ride

5

with hm in his truck.  Krieger agreed, and after they left in the truck, Lovelis checked Krieger's phone to make sure he was not recording.  According to Krieger, Lovelis began "screaming and hollering and going crazy" about a problem regarding his daughter, Minor Child.  Krieger testified that Lovelis told him if he did not take and pass a polygraph test, Lovelis would kill him and cut him into "a million pieces."  Krieger stated that Lovelis took out a gun and laid it on the console and then busted the windshield with his fist.

Krieger confirmed that when they arrived at the police station, Lovelis told the officers to "treat [Krieger] with dignity and respect," and then Lovelis left.  Krieger testified that he felt threatened by Lovelis and assumed that if he did not take the polygraph test, Lovelis would kill him, as Lovelis had said he would do.  Krieger stated that he "absolutely" felt like he took the CVSA under duress.  Krieger also stated that he did not feel particularly safe at the police station because he thought Lovelis was friends with the officers.

Krieger acknowledged that he had almost ten years' experience as a police officer, and that during his time as an officer, he had conducted suspect interviews and administered *Miranda* warnings, including in sexual-assault cases.  Krieger confirmed that he signed the waiver-of-rights form before giving his statement to the police and indicated that he already knew his rights based on his prior experience as a police officer.  Krieger did not recall signing the stipulation agreement whereby he stipulated to the CVSA results being admitted at trial, but he did acknowledge that he signed the document.

6

Krieger testified that he was never threatened by Sheriff McJunkins, Investigator Davis, or Investigator Shelton. Krieger, however, stated that at some point during the process, he had told the officers that he was afraid as a result of Lovelis's threats.

At the conclusion of the suppression hearing, Krieger argued that the CVSA result should be suppressed for two reasons: because he was taken to the police station by a show of force and threatened with death if he did not take the test and because he signed the stipulation of admissibility without the benefit of counsel.

The trial court announced from the bench that it was denying Krieger's motion to suppress and made findings in support of its decision. The trial court found that, according to the officers' testimony, Krieger was calm and did not communicate to them that he had been threatened. The trial court further found that Krieger had acknowledged almost ten years of law-enforcement experience and was aware of his rights to give or not give a statement as well as his right to an attorney. The trial court noted that, although the stipulation agreement itself did itself not advise Krieger of his right to counsel, Krieger had signed the waiver-of-rights form advising him of his right to counsel not long before he executed the stipulation and agreed that the CVSA results would be admissible at trial. After the trial court denied Krieger's motion to suppress the CVSA result, the case proceeded to a jury trial.

Minor Child was the first witness to testify at the jury trial. Minor Child testified that on February 14, 2019, when she was eight years old, she was sitting on Krieger's lap in a recliner in his living room and that she was covered by a blanket. Minor child stated that

7

her grandmother was also in the room. Minor child stated that Krieger fondled her and digitally penetrated her vagina. Minor Child stated that this had happened before and that it started when she was around four years old. After the February 14, 2019 incident, Minor Child called her mother to come get her, and she disclosed the sexual assault to her mother on the way home.

Rebecca Freeman, a nurse, testified that that she performed a rape-kit examination and that there were no physical findings. Jennifer Beaty-West of the Arkansas State Crime Laboratory testified that male DNA was found on Minor Child's leggings and underwear, but not enough for a profile.

Investigator David Shelton testified that he holds an advanced certificate in the field of CVSA and that he has been administering tests since 2008. Investigator Shelton stated that he performed a CVSA on Krieger and that Krieger's demeanor appeared normal that day. Investigator Shelton testified that his analysis indicated deception by Krieger when Krieger was asked whether he had ever touched Minor Child's vagina and whether he had ever made Minor Child touch his penis.

Krieger testified in his own defense. Krieger denied sexually assaulting Minor Child or ever touching her inappropriately.

Krieger attempted to present the testimony of Dr. Stephen Thorne, a licensed psychologist. The purpose of Dr. Thorne's testimony was to point out inconsistencies in Minor Child's statements during two forensic interviews by the Child Advocacy Centers (CAC). The State objected, arguing that the jury is the sole arbiter of credibility and that it

was improper for a witness to comment on the truthfulness of a victim's statements. The trial court excluded the proposed testimony on the basis that it would invade the province of the jury and the CAC interviews had not been introduced into evidence.

After the trial court made its ruling, Krieger proffered the testimony of Dr. Thorne. Krieger did not, however, proffer the recordings of the CAC interviews Dr. Thorne was critiquing. In his proffered testimony, Dr. Thorne noted that, although the CAC interviews had not been introduced into evidence, a recording was introduced and played to the jury wherein Minor Child's father asked questions to Minor Child about the abuse, and Minor Child described what had happened. Dr. Thorne thought that Minor Child's interview with her father had the potential to have an effect on the CAC interviews. Dr. Thorne testified that he noted inconsistencies in Minor Child's statements that were made during the CAC interviews, and he opined that that those inconsistencies should have been—but were not—explored by the forensic interviewers.

At the conclusion of the jury trial, Krieger was found guilty of second-degree sexual assault and sentenced to ten years in prison. Krieger appealed.

For his first argument on appeal, Krieger argues that, although he stipulated to the admissibility of results the CVSA, the test results should nonetheless have been excluded from evidence for various reasons. We reject each of Krieger's challenges to the admissibility of the CVSA results for the reasons explained below.

Arkansas Code Annotated section 12-12-701 (Repl. 2016) provides that all law enforcement agencies in this state are authorized to use a psychological stress evaluation

instrument to test or question individuals for the purpose of determining and verifying the truth of statements. Prior to administering any psychological stress evaluation tests, the person to whom the test is administered must be warned prior to any questioning that:

(1) He or she has a right to remain silent;

(2) Anything he or she says can be used against him or her in a court of law;

(3) He or she has the right to the presence of an attorney; and

(4) If he or she cannot afford an attorney, one may be appointed for him or her prior to his or her questioning if he or she so desires.

Ark. Code Ann. § 12-12-702 (Repl. 2016). Arkansas Code Annotated section 12-12-704 (Repl. 2016) provides, "The results of any such examination as provided in this subchapter shall be inadmissible in all courts in this state."

Notwithstanding the statutory prohibition against the admission of polygraph test results, the supreme court has carved out an exception to this prohibition upon a written stipulation of the parties that results may be introduced into evidence. The supreme court stated in *Hayes v. State*, 298 Ark. 356, 357, 767 S.W.2d 525, 525 (1989):

Arkansas law prohibits the admission of polygraph test results, except upon a written stipulation of the parties. *See* Ark. Code Ann. § 12–12–704 (1987); *Foster v. State*, 285 Ark. 363, 687 S.W.2d 829 (1985). Such stipulation agreements are to be scrutinized carefully by the courts, and will not be honored if any questions or problems arise. *See, e.g.*, *Foots v. State*, 258 Ark. 507, 528 S.W.2d 135 (1975).

Krieger's first challenge on appeal to the admissibility of the CVSA results is his claim that, notwithstanding the supreme court's holding to the contrary in *Hayes*, *supra*, there should be a universal ban on the admission of polygraph tests that cannot be circumvented

by a stipulation of the parties or for any other reason. Krieger asserts that "Arkansas jurisprudence on admissibility of 'lie detectors' has stumbled into a state of affairs where the courts have the power to approve a supposed agreement to violate the law." Krieger claims that this violates public policy as well as the separation-of-powers doctrine.

We observe that this particular argument was not raised below, and it is well settled that an appellant must raise and make an argument at trial in order to preserve the argument on appeal. *See Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003). Krieger acknowledges that he failed to raise this argument below, but he attempts to invoke the fourth exception to the contemporaneous-objection rule in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). The fourth *Wicks* exception is based on Ark. R. Evid. 103(d), which provides that "[n]othing in this rule precludes taking notice of errors affecting substantial rights although they were not brought to the attention of the court."[3]

We do not agree with Krieger's contention that this is an issue that may be raised for the first time on appeal in the absence of a proper objection below. Our case law is quite clear that *Wicks* presents only narrow exceptions that are to be rarely applied, *Williams v.*

---

[3]We note that prior to the submission of this case to our court, Krieger filed a motion to certify the case to the supreme court, arguing that this case presents issues of significant public interest or a legal principle of major importance. In his motion, Krieger questioned how the supreme court could carve out an exception to the statutory categorical ban on polygraph-test evidence and asserted that, although this issue was not raised at trial, this was cognizable on appeal under *Wicks*, *supra*. The supreme court denied Krieger's motion to certify the case.

*State*, 2022 Ark. App. 101, 641 S.W.3d 83, and Krieger has presented no convincing argument that the fourth *Wicks* exception is applicable here.

Nevertheless, even were we to agree that this issue is preserved, we would be unable to afford Krieger any relief. This is because we are bound to follow the precedents set by the supreme court, and we are powerless to overrule its decisions. *Brewer v. State*, 68 Ark. App. 216, 6 S.W.3d 124 (1999). The supreme court has repeatedly held that a polygraph test may be admissible upon written stipulation of the parties, *see Hayes, supra, Foster, supra, Foots, supra*, and we are bound by those decisions.

Krieger next argues that, even if there is no universal prohibition against the admissibility of polygraph tests, we should reverse the trial court's admission of the polygraph test results under the circumstances presented in this case. Krieger argues that the test results should have been suppressed because (1) Krieger was not informed of his right to counsel when he signed the stipulation agreement; and (2) he was coerced into signing the stipulation agreement where the victim's armed father threatened Krieger, a seventy-five-year-old diabetic, and demanded that he accompany him to the police station to take the test. Krieger notes that in *Hayes, supra*, the supreme court stated, "Such stipulation agreements are to be scrutinized carefully by the courts, and will not be honored if any questions or problems arise." *Hayes*, 298 Ark. at 357, 767 S.W.2d at 525. Krieger submits that his uncounseled decision to sign the stipulation and the fact that he was coerced into taking the polygraph test constitute the "questions or problems" contemplated by the supreme court in *Hayes*.

12

As an initial matter, we observe that in making the above statement in *Hayes*, the supreme court cited its prior opinion in *Foots*, *supra*. In *Foots*, the supreme court affirmed the trial court's exclusion of two polygraph tests, even though there was a stipulation as to the admissibility of the tests, and offered the following explanation:

> During the trial the defense sought to introduce the testimony of two polygraph examiners, H. G. Kelley and police sergeant Don Wall. The testimony was offered pursuant to pre-trial stipulations which recited that the defendants 'will submit to polygraph tests' and that 'any and all polygraph examination results taken' by the defendants may be introduced in evidence. The trial judge refused to allow Kelley's testimony on the ground that his examinations had been made before the stipulations and refused to allow Wall's testimony on the ground that he was not a qualified expert witness in polygraphics.

> We think the trial judge correctly interpreted the stipulation, which contemplated tests to be made thereafter. *Lang v. State*, 258 Ark. 504, 527 S.W.2d 900, also decided today. Hence Kelley's testimony was properly excluded. Officer Wall testified that he was an intern in polygraphics, not a licensed examiner, and that his tests were reviewed by his supervisor. See Ark. Stat. Ann. § 71-2207 (Supp. 1973). We find no abuse of the trial court's wide discretion in determining the qualifications of an expert witness. *Firemen's Ins. Co. v. Little*, 189 Ark. 640, 74 S.W.2d 777 (1934).

*Foots*, 258 Ark. at 509–10, 528 S.W.2d at 136–37. The "questions or problems" that arose in *Foots* were that one of the polygraph tests was taken before the stipulation, and the other was taken by an unqualified examiner. In the present case, these problems do not exist because it is undisputed that the parties entered the stipulation prior to Krieger's taking the polygraph test, and the qualification of the examiner, Investigator Shelton, was challenged neither below nor on appeal.

In *Wingfield v. State*, 2019 Ark. App. 111, 572 S.W.3d 434, this court set forth the following considerations in reviewing the admissibility of a stipulated polygraph test:

13

Arkansas law prohibits the admission of polygraph test results except upon a written stipulation of the parties. *Hayes*, *supra.* Stipulation agreements about the use of polygraphs are to be scrutinized carefully by the courts and will not be honored if any questions or problems arise. *Id.* We review a circuit court's decision denying a defendant's motion to suppress by making an independent determination based on the totality of the circumstances. *Holly v. State*, 2017 Ark. 201, 520 S.W.3d 677. But a circuit court's factual findings will be reversed only if they are clearly against the preponderance of the evidence. *Id.*

*Wingfield*, 2019 Ark. App. 111, at 8, 572 S.W.3d at 440.

On this record, we conclude that the trial court's decision to admit the stipulated-to CVSA result was not clearly against the preponderance of the evidence. With respect to the right to counsel, it is undisputed that Krieger was advised of his rights in writing, and he initialed each right confirming that he understood them immediately before giving his statement to the police. And Krieger admitted that he was aware of his rights based on his near ten-year career in law enforcement, during which he himself had Mirandized and interrogated many suspects. Not long after giving his statement wherein he denied any wrongdoing, Krieger signed the stipulation wherein he agreed to take the polygraph test and to the admissibility of the results. Considering the reasonably short lapse of time between Krieger's being advised of his right to counsel and his execution of the stipulation, which all occurred during the same episode in the same location, we do not agree with Krieger's argument that he was not informed of or aware of his right to counsel when he signed the stipulation agreement.

Nor do we agree that the trial court erred in not finding coercion in Krieger's execution of the stipulation. Krieger testified that he was never threatened by any of the

14

officers, although he stated that he had been threatened by the victim's father and that he had communicated those threats to the officers. However, each of the officers testified that Krieger appeared calm during their interactions and did not appear to be in distress or under any threats. And Krieger, a former police officer of almost ten years, reportedly insisted that he knew his rights and wanted to make a statement to the police. We defer to the superior position of the trial court to evaluate the credibility of witnesses at the suppression hearing, and any conflicts in the testimony of the witnesses are for the trial court to resolve. *Spraglin v. State*, 2015 Ark. App. 166. Leaving credibility determinations to the trial court, as we must, we conclude that there was no error in its finding that Krieger signed the stipulation of his own volition and not under coercion.

Krieger also makes two more arguments challenging the admission of the CVSA results. Krieger argues the involvement of the prosecutor in securing the stipulation violated the Arkansas Rules of Professional Conduct and that the admission of the results of the CVSA constituted inadmissible hearsay and a violation his right to confrontation. However, because neither of these arguments were raised to the trial court, neither is preserved for review.[4]

Krieger's remaining argument is that the trial court erred in excluding the testimony of his expert witness, Dr. Stephen Thorne, who was asked by Krieger to critique the manner in which two forensic interviews with the victim were conducted. A decision to admit or

---

[4]Krieger does not allege that a *Wicks* exception applies to either of these arguments being raised for the first time on appeal.

exclude evidence is within the sound discretion of the trial court. *Rounsaville v. State*, 374 Ark. 356, 288 S.W.3d 213 (2008). Krieger cites *Harper v. State*, 2019 Ark. App. 163, 573 S.W.3d 596, in which this court held that a State's expert may generally testify about witness recantation and that it is not unusual for a sexual-abuse victim to recant. Krieger argues that, considering what the prosecution is permitted to present in expert testimony, the exclusion of Dr. Thorne's testimony was an abuse of discretion and mandates reversal.

We can find no error under this point because the forensic interviews that Krieger's expert sought to critique were neither introduced into evidence nor proffered by Krieger. It was Krieger's duty to present a record on appeal demonstrating error, *Bullock v. State*, 353 Ark. 577, 111 S.W.3d 380 (2003), and the record presented fails to demonstrate any prejudicial error in excluding the expert's testimony.

Affirmed.

GLADWIN and KLAPPENBACH, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.