Cite as 2025 Ark. App. 147

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-23-597

| | | |
|---|---|---|
| | | **Opinion Delivered** March 5, 2025 |
| JOHN KRIEGER | | APPEAL FROM THE HOWARD |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 31CR-19-70] |
| V. | | |
| | | HONORABLE ROBERT EDWARDS, |
| | | JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant John Krieger appeals from an order denying his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.1. Krieger argues on appeal that the circuit court erred in denying his petition for postconviction relief because his trial counsel was ineffective for (1) failure to object to various matters concerning the admission of a polygraph test;[1] and (2) failure to proffer the recordings of forensic interviews with Minor Victim (MV) to which his expert witness, Dr. Stephen Thorne, would have testified were conducted improperly. We affirm.

I. *Background*

---

[1]A polygraph test is also sometimes referred to herein as a Computer Voice Stress Analyzer (CVSA).

Before addressing the allegations of ineffective assistance of counsel, it is necessary to discuss some of the events leading to Krieger's jury trial and the evidence adduced at trial. Krieger's eight-year-old step-granddaughter, MV, told her mother on February 14, 2019, that Krieger had sexually assaulted her that day at Krieger's house while MV was sitting on Krieger's lap. On February 15, 2019, MV underwent a forensic interview and disclosed the details of the sexual assault.[2]

On February 19, 2019, MV's father, Scott Lovelis, who is Krieger's stepson, drove Krieger in his truck to the police station. While there, Krieger was given his *Miranda* warnings, and he gave a statement to the police wherein he denied having sexually assaulted MV. Krieger then signed a written stipulation, which was also signed by the polygraph examiner—Investigator David Shelton of the prosecuting attorney's office—and the prosecuting attorney. The written stipulation provided that Krieger agreed to voluntarily submit to a CVSA regarding his knowledge of the alleged offense, and that "John Krieger, and the State of Arkansas further agree and stipulate that the results of the test or evaluation shall be admissible at any pretrial hearing or at trial of this cause, and that David Shelton shall be allowed to testify at any hearing or at trial regarding said results and the administration of the test or evaluation." Krieger also signed a release, which was signed by Investigator Shelton, wherein Krieger agreed to "voluntarily, without duress, coercion, promise, reward or immunity, submit to examination by the Voice Stress Analysis Truth

---

[2]A second forensic interview was later conducted on September 17, 2019, wherein MV again disclosed the details of the sexual assault.

Verification technique[.]" Krieger then submitted to the CVSA, and Investigator Shelton detected deception by Krieger when answering questions related to sexual abuse committed against MV. Krieger was subsequently charged with second-degree sexual assault.

Before trial, Krieger moved to suppress the results of the CVSA on the grounds that his consent to the test was coerced and therefore involuntary, and also because he signed the stipulation of admissibility without the benefit of counsel. In the motion, Krieger asserted that on February 19, 2019, MV's father, Scott Lovelis, came to Krieger's home and asked him to go for a ride in his truck. Krieger alleged that once he was in the truck and away from his home, Lovelis produced a handgun, busted out the front windshield of the truck with his fist, and demanded that Krieger immediately go to the police station and take a polygraph test. Krieger further alleged that Lovelis threatened to cut Krieger into "a million pieces" if he did not comply and that Krieger, in fear for his life, agreed to take the test. Krieger asserted that he was threatened and coerced into agreeing to take the test without the benefit of an attorney. For these reasons, Krieger asked that the trial court prohibit any mention of the CVSA at trial.

The trial court held a hearing and heard testimony on Krieger's motion to suppress the results of the CVSA. Sheriff Bryan McJunkins testified that after Lovelis and Krieger arrived at the police station that day, he spoke with Krieger, and Krieger agreed to give a statement and take a polygraph test. Sheriff McJunkins described Krieger as calm with no indication he had been threatened or was in distress. Investigator Joey Davis, who conducted the Mirandized interview with Krieger, also testified that he did not see Lovelis exhibit any

3

threatening behavior and stated that Krieger appeared very calm and relaxed. While going over the waiver-of-rights form, Krieger offered that he had formerly been a police officer for ten years, had conducted numerous interviews with criminal suspects, and knew how the process worked. Investigator Shelton testified that he went over the stipulation agreement and explained to Krieger that if he signed it, the CVSA could be used in court; that Krieger appeared to have no trouble understanding the stipulation agreement and signed it; and that Krieger never stated that he was afraid or was under duress. Krieger testified that although none of the officers threatened him, he felt threatened by Lovelis and assumed if he did not take the polygraph test, Lovelis would kill him. Krieger stated further that he told the officers he was afraid as a result of Lovelis's threats.

At the conclusion of the suppression hearing, Krieger argued that the CVSA result should be suppressed for two reasons: because he was taken to the police station by a show of force and threatened with death if he did not take the test and because he signed the stipulation of admissibility without the benefit of counsel.

The trial court announced from the bench that it was denying Krieger's motion to suppress and made findings in support of its decision. The trial court found that, according to the officers' testimony, Krieger was calm and did not communicate to them that he had been threatened. The trial court further found that Krieger had acknowledged almost ten years of law-enforcement experience and was aware of his right to give or not give a statement as well as his right to an attorney. The trial court noted that, although the stipulation agreement itself did not advise Krieger of his right to counsel, Krieger had signed the *Miranda*

4

waiver-of-rights form advising him of his right to counsel not long before he executed the stipulation and agreed that the CVSA results would be admissible at trial. After the trial court denied Krieger's motion to suppress the CVSA result, the case proceeded to a jury trial.

MV testified that on February 14, 2019, when she was eight years old, she was sitting on Krieger's lap in a recliner in his living room and that she was covered by a blanket. MV stated that her grandmother was also in the room. MV stated that Krieger fondled her and digitally penetrated her vagina. She stated that this had happened before and that it started when she was around four years old. After the February 14, 2019, incident, MV called her mother to come get her, and she disclosed the sexual assault to her mother on the way home. MV underwent a rape-kit examination with no physical findings. Male DNA was found on MV's leggings and underwear but not enough for a profile.

Investigator David Shelton testified that he holds an advanced certificate in the field of CVSA and that he has been administering tests since 2008. Investigator Shelton stated that he performed a CVSA on Krieger and that Krieger's demeanor appeared normal that day. Investigator Shelton testified that his analysis indicated deception by Krieger when Krieger was asked whether he had ever touched MV's vagina and whether he had ever made MV touch his penis. Krieger added that he sent the polygraph chart to other certified experts who all agreed that deception was indicated.

Krieger testified in his own defense. Krieger denied he had ever sexually assaulted or touched MV inappropriately. Krieger attempted to present the testimony of Dr. Stephen

5

Thorne, a licensed psychologist. The purpose of Dr. Thorne's testimony was to point out inconsistencies in MV's statements during two forensic interviews by the Child Advocacy Center (CAC). The State objected, arguing that the jury is the sole arbiter of credibility and that it was improper for a witness to comment on the truthfulness of a victim's statements. The trial court excluded the proposed testimony on the basis that it would invade the province of the jury, and the CAC interviews had not been introduced into evidence.

After the trial court made its ruling, Krieger proffered the testimony of Dr. Thorne. Krieger did not, however, proffer the recordings of the CAC interviews Dr. Thorne was critiquing. In his proffered testimony, Dr. Thorne noted that, although the CAC interviews had not been introduced into evidence, a recording was introduced and played to the jury wherein MV's father asked MV questions about the abuse, and MV described what had happened. Dr. Thorne thought that MV's interview with her father had the potential to influence the CAC interviews. Dr. Thorne testified that he noted inconsistencies in MV's statements that were made during the CAC interviews, and he opined that that those inconsistencies should have been—but were not—explored by the forensic interviewers. Specifically, Dr. Thorne noted that during an interview, MV stated that she and Krieger were underneath a blanket with a computer on top of them, and the interviewer did not ask MV what happened to the computer during the alleged sexual assault. Dr. Thorne noted further that MV stated in an interview that during the assault, Krieger asked her, "[D]oes that feel good?" but that the interviewer did not ask MV whether her grandmother, who was also present in the living room, heard Krieger say this.

6

Based on the evidence presented, the jury convicted Krieger of second-degree sexual assault and sentenced him to ten years in prison.

After Krieger's conviction, he appealed to this court. On appeal, Krieger argued (1) the trial court erred in denying his motion to suppress the results of the polygraph test, notwithstanding Krieger's written stipulation to the admission of the test results prior to his taking the test; and (2) the trial court erred in excluding the testimony of his expert witness, Dr. Thorne, who was called to critique the manner in which the forensic interviews of MV were conducted. We affirmed on direct appeal. *Krieger v. State*, 2022 Ark. App. 456, 655 S.W.3d 321 (*Krieger I*).

In *Krieger I*, we addressed the first issue pertaining to the admission of the polygraph test and acknowledged that Ark. Code Ann. § 12-12-704 (Repl. 2016) provides, "The results of any such examination as provided in this subchapter shall be inadmissible in all courts in this state." We noted, however, that notwithstanding the statutory prohibition against the admission of polygraph test results, the supreme court has carved out an exception to this prohibition upon a written stipulation of the parties that results may be introduced into evidence. The supreme court stated in *Hayes v. State*, 298 Ark. 356, 357, 767 S.W.2d 525, 525 (1989):

> Arkansas law prohibits the admission of polygraph test results, except upon a written stipulation of the parties. *See* Ark. Code Ann. § 12-12-704 (1987); *Foster v. State*, 285 Ark. 363, 687 S.W.2d 829 (1985). Such stipulation agreements are to be scrutinized carefully by the courts, and will not be honored if any questions or problems arise. *See, e.g., Foots v. State*, 258 Ark. 507, 528 S.W.2d 135 (1975).

Krieger's first challenge to the admissibility of the polygraph results on direct appeal was that there should be a universal ban on the admission of such tests that cannot be circumvented and that any Arkansas case to the contrary violates public policy and the separation-of-powers doctrine. We observed that this issue was not raised to the trial court and was not preserved, and we also wrote:

> Nevertheless, even were we to agree that this issue is preserved, we would be unable to afford Krieger any relief. This is because we are bound to follow the precedents set by the supreme court, and we are powerless to overrule its decisions. *Brewer v. State*, 68 Ark. App. 216, 6 S.W.3d 124 (1999). The supreme court has repeatedly held that a polygraph test may be admissible upon written stipulation of the parties, *see Hayes*, *supra*, *Foster*, *supra*, *Foots*, *supra*, and we are bound by those decisions.

*Krieger I*, 2022 Ark. App. 456, at 12, 655 S.W.3d at 327–28. We then addressed Krieger's arguments that the polygraph test results should have been suppressed because he was not informed of his right to counsel when he signed the stipulation agreement and he was coerced into signing the stipulation agreement. We rejected both of those arguments, noting that Krieger was Mirandized before he signed the stipulation agreement; the officers testified that Krieger appeared calm and not under any threat; and Krieger, a former police officer of almost ten years, reportedly insisted that he knew his rights and wanted to make a statement to the police. Krieger's final argument under this point was that the involvement of the prosecutor in securing the stipulation violated the Arkansas Rules of Professional Conduct and that the admission of the CVSA results constituted inadmissible hearsay and a violation of his right to confrontation. We held that because neither of these arguments was raised to the trial court, neither was preserved for review.

8

In *Krieger I*, we next addressed Krieger's remaining argument that the trial court erred in excluding the testimony of his expert witness, Dr. Thorne, who was asked by Krieger to critique the manner in which two forensic interviews with MV were conducted. We rejected that argument, and wrote:

> We can find no error under this point because the forensic interviews that Krieger's expert sought to critique were neither introduced into evidence nor proffered by Krieger. It was Krieger's duty to present a record on appeal demonstrating error, *Bullock v. State*, 353 Ark. 577, 111 S.W.3d 380 (2003), and the record presented fails to demonstrate any prejudicial error in excluding the expert's testimony.

*Krieger I*, 2022 Ark. App. 456, at 16, 655 S.W.3d at 330.

After we delivered our opinion in *Krieger I* that affirmed Krieger's conviction, Krieger filed a petition for review in the supreme court. Krieger argued that the case involved significant issues regarding the admissibility of polygraph tests that needed clarification or development of the law, or overruling of precedent. In the petition, Krieger also argued that the court of appeals had misinterpreted the supreme court's precedents on the issue. The supreme court denied Krieger's petition for review, and the mandate was issued the same day.

## II. *Krieger's Petition for Postconviction Relief*

After we affirmed on direct appeal and our mandate was issued in *Krieger I*, Krieger filed a timely petition for postconviction relief. In his petition, Krieger raised two points, arguing that he received ineffective assistance of trial counsel. For his first point, Krieger argued that his trial counsel was ineffective for failure to object to various matters concerning

9

the admission of the polygraph test, and specifically that trial counsel was ineffective because (1) trial counsel failed to argue that the practice of admitting such test results by stipulation violates the prohibition in Ark. Code Ann. § 12-12-704; (2) trial counsel failed to argue that the polygraph test was inadmissible pursuant to a similar prohibition in Ark. Code Ann. § 17-39-302; (3) trial counsel failed to argue that stipulated admissions are against public policy because they are agreements to violate the law; (4) trial counsel failed to argue that under Arkansas law, a witness cannot opine that another witness is, or is not, telling the truth; (5) trial counsel failed to argue that the involvement of the prosecutor in obtaining the stipulation violated the Arkansas Rules of Professional Conduct and that the prosecutor's office should have been disqualified; and (6) trial counsel failed to argue that the results of the polygraph test violated the constitutional right of confrontation and also violated the prohibitions against hearsay in the Arkansas Rules of Evidence. For his second point, Krieger argued that his trial counsel was ineffective for failure to proffer the recordings of MV's forensic interviews to which Dr. Thorne would have testified were conducted improperly and that because trial counsel did not proffer the recordings, Krieger was not able to prevail on appeal on the issue of the exclusion of Dr. Thorne's testimony.

At the postconviction-relief hearing, MV's two forensic interviews, which trial counsel had failed to proffer at trial, were played. In addition, there was testimony from Krieger's trial counsel, Shorty Barrett.

Barrett acknowledged in his testimony that although he argued at trial that the polygraph results should be suppressed because the stipulation agreement was coerced and

10

was executed without the benefit of counsel, he did not challenge the polygraph results on any of the bases that Krieger alleged in the petition for postconviction relief.[3] Barrett testified that he did not argue there was a universal ban on polygraph results because of the supreme court's decision to the contrary in *Hayes v. State*, and he stated that he did not argue that the supreme court was wrong. Regarding Dr. Thorne's proposed expert testimony about MV's forensic interviews, Barrett stated that although he did not proffer the interviews, he proffered Dr. Thorne's testimony, which he thought would be sufficient to develop the issue for appeal.

After the hearing, the circuit court entered an order denying Krieger's petition for postconviction relief. In its order, the circuit court made these relevant findings:

> Ark. Code Ann. 12-12-704 prohibits the admission of polygraph tests in all Arkansas courts. However, for over 40 years the Arkansas Supreme Court has recognized an exception to this prohibition and allowed such results to be admissible if both parties execute a written stipulation agreeing to the admissibility of the test and the results. *State v. Bullock*, 262 Ark. 394, 557 S.W.2d 193 (1977); *Wilson v. State*, 277 Ark. 43, 639 S.W.2d 45 (1982). Here, there was a written stipulation signed by both parties that the test and results would be admissible at trial. The trial court conducted an extensive pretrial hearing concerning the stipulation agreement and found the defendant executed the agreement after being aware of his right to counsel and without threats or coercion.
>
> In his Rule 37 Petition the defendant claims his trial counsel was ineffective with respect to six issues concerning the admission of the CVSA test and the results thereof. The issues are:
>
> I

---

[3]Barrett acknowledged that he did file a motion in limine requesting that the State's witnesses be prohibited from testifying about the truthfulness of the victim or the defendant. However, Barrett conceded that he did not specifically argue below that this motion extended to testimony about the polygraph results, nor was there any ruling on the issue.

That defendant's trial counsel failed to argue the admission of the test results violated Ark. Code Ann. 12-12-704. In fact, the Motion to Suppress filed by the defendant's trial counsel and his oral statements to the trial court at the suppression hearing did specifically raise that code section as a basis for suppression of the test and results. That claim was rejected by the trial court and the Court of Appeals based on the agreed stipulation by both parties that the test and results would be admissible at trial.

II

That defendant's trial counsel failed to argue the admission of the test results violated Ark. Code Ann. 17-39-302. That section is part of the license requirements for a CVSA examiner and states that the code subchapter should not be used to permit introduction of a CVSA test in a criminal proceeding. Suppression of the test results would not have been granted based on that code section.

III

That defendant's trial counsel failed to argue that stipulated admissions are against public policy because they violate the law. As set forth above, the Arkansas Supreme Court has carved out an exception to provide that a written stipulation by the parties may allow admission of the test results at trial. *Hayes v. State*, 298 Ark. 356, 767 S.W.2d 525 (1989). The Arkansas Supreme Court has never found a public policy problem with the exception it created and if the defendant's trial counsel had raised such an issue it would have been rejected.

IV

That the defendant's trial counsel failed to argue that under Arkansas law a witness cannot opine that another witness is or is not telling the truth. In fact, the defendant's trial counsel did argue that issue in the Motion in Limine. The trial court, in accepting the written stipulation concerning the CVSA test, rejected that argument.

V

That the defendant's trial counsel failed to argue that the prosecutor's office should have been disqualified from the defendant's trial because of the prosecutor's involvement in obtaining the stipulation concerning the CVSA test. The defendant does not allege and it is not apparent that the result of the defendant's trial would have been different if the prosecutor's office had been disqualified as an attorney in

the defendant's trial. A special prosecutor would have been appointed to present the same evidence against the defendant.

VI

That the defendant's trial counsel failed to argue that admitting the results of the CVSA test violated the defendant's right to confrontation and Arkansas Rules of Evidence on hearsay. Once again, more than 40 years ago the Arkansas Supreme Court in creating the exception for admissibility of stipulated CVSA test results preempted objection to those results based on confrontation and hearsay. Had the defendant's trial counsel raised those objections they would have been rejected.

For the reasons stated above the court finds the defendant's trial counsel was not ineffective with respect to the six issues claimed by the defendant and he was not prejudiced thereby.

Defendant also claims that the defendant's trial counsel was ineffective for failing to proffer recordings of interviews of [MV] conducted at the local child safety center.

At trial the State did not seek to admit [MV's] child safety center interviews. [MV] testified at trial and was subjected to cross examination by the defendant's trial counsel. The defendant retained Dr. Stephen Thorne to testify about [MV's] interviews. Since the interviews were not introduced in the State's case, the trial court would not allow Dr. Thorne's testimony.

The defendant proffered testimony from Dr. Thorne that he observed certain inconsistencies in [MV's] interviews that he thought the interviewer should have explored. The defendant's trial counsel had the opportunity to use any alleged inconsistencies in his trial cross-examination of [MV] and if he thought it warranted, he could have offered the interviews to impeach [MV's] testimony. He chose not to.

At the request of defense counsel, the court watched and listened to over 2 hours of [MV's] interviews during the Rule 37 hearing. I find the decision of the defendant's trial counsel not to offer [MV's] interviews a valid matter of trial strategy. I also find that if they had been offered in evidence the jury's result would not have changed.

Pursuant to the above findings, the defendant's petition for relief under Rule 37 is denied.

This appeal followed.

13

III. *Standard of Review*

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been made. *Id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.*

Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Conley*, *supra.* In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first demonstrate that counsel's performance was deficient. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Woods v. State*, 2019 Ark. 62, 567 S.W.3d 494. In other words, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Mancia v. State*, 2015 Ark. 115, 459 S.W.3d 259. Additionally, counsel is allowed great leeway in making strategic and tactical decisions, particularly when deciding not to call a witness. *Johnson v. State*, 2018 Ark. 6, 534 S.W.3d 143. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Id.* A court must indulge in a strong presumption that

14

counsel's conduct falls within the wide range of reasonable professional assistance. *Woods*, *supra*. The burden is on the petitioner to overcome this presumption and to identify specific acts and omissions by counsel that could not have been the result of reasoned professional judgment. *Sims v. State*, 2015 Ark. 363, 472 S.W.3d 107. Conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Id.*

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Conley, supra*. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* We also recognize that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Anderson v. State*, 2011 Ark. 488, at 3–4, 385 S.W.3d 783, 787 (quoting *Strickland*, 466 U.S. at 697).

IV. *Krieger's Points on Appeal*

A. Trial Counsel Was Ineffective for Failure to Object to Various Matters
Concerning the Admission of the Polygraph Test

Krieger first argues that the circuit erred in denying his petition because his trial counsel was ineffective in failing to object to various matters concerning the admission of the polygraph test. Although Krieger's trial counsel challenged the admission of the polygraph test on the grounds that the stipulation agreement to admissibility of the test was coerced and executed without counsel, Krieger argues that his counsel was ineffective for not challenging the test result on six additional grounds. We discuss each of these six subpoints in turn.

1. *Trial counsel was ineffective for failing to argue that the practice of admitting such test results by stipulation violates the prohibition in Ark. Code Ann. § 12-12-704*

Arkansas Code Annotated section 12-12-704 (Repl. 2016) provides, "The results of any such examination (psychological stress test) as provided in this subchapter shall be inadmissible in all courts in this state." Krieger argues that his trial counsel was ineffective for failing to argue that this statutory ban prohibited the introduction into evidence of the polygraph results. Krieger argues that although the parties executed a stipulated agreement to the admission of the polygraph results, the above statute is a categorical ban and contains no such exception, and the admission of the test results was nothing more than an agreement to violate the law. Krieger asserts that, had this issue been presented at trial, there is a reasonable probability that the trial court would have excluded the evidence or that the Arkansas appellate courts would agree that this categorical statutory ban should be enforced. For the following reasons, we disagree.

16

When Krieger's trial counsel, Barrett, moved to suppress the polygraph results, he cited and quoted the language in Ark. Code Ann. § 12-12-704 but then acknowledged the stipulation agreement[4] and the supreme court's holding in *Hayes v. State*, 298 Ark. 356, 767 S.W.2d 525 (1989). At the postconviction hearing, Barrett explained that he did not specifically argue in his motion to suppress that this statute prohibited admission of the test results because the supreme court in *Hayes* expressly held that Arkansas law prohibits the admission of polygraph results *except upon a written stipulation of the parties*. Barrett testified that he chose not to argue that the supreme court in *Hayes* was wrong, and he fashioned suppression arguments tailored to the supreme court's pronouncement in *Hayes* that stipulations about the use of polygraph tests are to be scrutinized carefully by the courts. Thus, Barrett chose to challenge the polygraph results based on alleged coercion and lack of counsel when Krieger executed the stipulation—arguments that were ultimately rejected by the trial court and affirmed by this court on direct appeal in *Krieger I*.

On direct appeal in *Krieger I*, in addition to raising the challenges to the polygraph test made at trial and preserved for review, Krieger also made a wide-ranging public-policy argument that there should be a universal ban on the admission of polygraph tests based, in part, on the plain language of Ark. Code Ann. § 12-12-704 and Krieger's claim that

---

[4]The stipulation agreement executed by Krieger was not limited in scope but provided that he and the State agreed and stipulated that "the results of the test or evaluation shall be admissible at any pretrial hearing or at trial of this cause, and that David Shelton shall be allowed to testify at any hearing or at trial regarding said results and the administration of the test or evaluation."

17

stipulation agreements violate the law and are against public policy. After first observing that this issue was not raised to the trial court and was not preserved, we then wrote:

> Nevertheless, even were we to agree that this issue is preserved, we would be unable to afford Krieger any relief. This is because we are bound to follow the precedents set by the supreme court, and we are powerless to overrule its decisions. *Brewer v. State*, 68 Ark. App. 216, 6 S.W.3d 124 (1999). The supreme court has repeatedly held that a polygraph test may be admissible upon written stipulation of the parties, *see Hayes, supra, Foster, supra, Foots, supra*, and we are bound by those decisions.

*Krieger I*, 2022 Ark. App. 456, at 12, 655 S.W.3d at 327–28. The supreme court's holding in *Hayes* has been settled law for more than thirty-five years. After we delivered *Krieger I*, Krieger filed a petition for review in the supreme court, arguing that the case involved significant issues regarding the admissibility of polygraph tests that needed clarification or development of the law, or overruling of precedent, and the supreme court denied the petition.[5]

In light of these considerations, and primarily the supreme court's decision in *Hayes, supra*, we hold that Krieger's trial counsel was not ineffective in not arguing below that admitting the polygraph results by stipulation violated Ark. Code Ann. § 12-12-704. Counsel is not ineffective for failing to make a meritless objection, *Wood v. State*, 2015 Ark. 477, 478 S.W.3d 194, and, more particularly, is not ineffective for failing to object to the application of settled supreme court case law that is binding on the trial court and the parties.

---

[5]In *Thomas v. State*, 370 Ark. 70, 78, 257 S.W.3d 92, 99 (2007), the supreme court stated, "We do not lightly overrule cases and apply a strong presumption in favor of the validity of prior decisions."

18

As a matter of trial strategy, and consistent with the supreme court's holding in *Hayes*, Krieger's trial counsel did not argue a universal ban under Ark. Code Ann. § 12-12-704 but instead challenged the stipulation agreement, arguing coercion and lack of counsel. We find no clear error in the circuit court's rejection of this ground for postconviction relief; Krieger's counsel was not ineffective in this regard nor would such an argument have produced a reasonable probability in a different outcome of the proceeding.

2. *Trial counsel was ineffective for failing to argue that the polygraph test was inadmissible pursuant to the statutory prohibition in Ark. Code Ann. § 17-39-302*

Krieger next argues that his trial counsel was ineffective for failing to argue that the polygraph test was inadmissible under Ark. Code Ann. § 17-39-302 (Repl. 2018), which is part of the code section applicable to licensing requirements for voice stress analyzers and provides, "This subchapter shall not be construed to permit the results of any voice stress analysis examination to be introduced or admitted in any criminal proceeding." We disagree. Although this statutory provision was not raised at trial, it was specifically raised on direct appeal as part of Krieger's public-policy argument, which this court rejected under the plain reading of *Hayes*, which expressly held that Arkansas law prohibits the admission of polygraph results *except upon a written stipulation of the parties.* In light of *Hayes*, Krieger's trial counsel was not ineffective in not raising this statute as a bar to the polygraph results at trial, and had it been raised, there was no reasonable probability of changing the outcome of the trial. Accordingly, we cannot say that the circuit court's denial of postconviction relief on this point was clearly erroneous.

19

3. *Trial counsel was ineffective for failing to argue that stipulated admissions are against public policy*

Krieger next argues that his trial counsel was ineffective in not arguing that stipulated agreements to admit polygraph tests are against public policy. The issue of whether such agreements violate public policy was raised on direct appeal and rejected by this court in *Krieger I*, citing the supreme court's holding in *Hayes*. In denying this claim for postconviction relief, the circuit court noted that in 1989, the supreme court in *Hayes* carved out an exception to provide that a written stipulation by the parties may allow admission of the test results at trial, that the supreme court has not since found a public-policy problem with the exception it created, and that had Krieger's trial counsel raised this issue at trial it would have been rejected. We agree with the circuit court and conclude that it did not clearly err in denying postconviction relief on this point.

4. *Trial counsel was ineffective for failing to argue that under Arkansas law, a witness cannot opine that another witness is or is not telling the truth*

Under this subpoint, Krieger argues that his trial counsel was ineffective for failing to argue that a witness cannot opine that another witness is or is not telling the truth—a practice sometimes called bolstering. Krieger cites *Montgomery v. State*, 2014 Ark. 122, where the supreme court stated that it has consistently recognized that an expert's or a witness's testimony opining or directly commenting on the truthfulness of a victim's statement or testimony is generally inadmissible. Krieger argues that this principle cannot be evaded by laundering the testimony through a machine and that had the issue been presented at trial, the results of the polygraph test would have been excluded.

We observe that this argument was specifically included in Krieger's wide-ranging public-policy argument that he made on direct appeal and was rejected by our court in *Krieger I.* Because the supreme court in *Hayes* held that polygraph test results may be admitted by stipulation of the parties, this necessarily included admission of evidence bearing on whether the subject of the test was or was not being deceptive during the test. We therefore hold that Krieger's counsel was not ineffective for failing to raise this argument, nor would the argument have had a reasonable probability of changing the outcome of the trial. Accordingly, we cannot say that the circuit court's denial of postconviction relief on this point was clearly erroneous.

5. *Trial counsel was ineffective for failing to argue that the involvement of the prosecutor in obtaining the stipulation violated the Arkansas Rules of Professional Conduct and that the prosecutor's office should have been disqualified*

Krieger next argues that his trial counsel was ineffective for failing to argue that the involvement of the prosecutor in obtaining the stipulation violated professional-conduct rules and that the prosector should have been disqualified. Krieger notes that the polygraph test was conducted by an investigator with the prosecutor's office and that the prosecuting attorney himself signed the stipulation agreement. Krieger cites Arkansas Rule of Professional Conduct 3.8(b)–(c), which provides:

The prosecutor in a criminal case shall:

. . . .

(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;

21

(c) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing[.]

Citing *Berry v. Saline Memorial Hospital*, 332 Ark. 182, 907 S.W.2d 736 (1995), Krieger states that ethical violations by the prosecutor, including the appearance of impropriety, have adverse consequences in the substantive case. Krieger asserts that had the prosecutor been disqualified, a special prosecutor would not have been invested in defending the unethical activities of the elected prosecutor's office.

We conclude that Krieger's trial counsel was not ineffective on this asserted ground for the following reasons. Although Krieger complains that the prosecutor signed the stipulation agreement, this is consistent with the supreme court's holding in *Hayes* allowing polygraph results to be admitted "upon written stipulation of the *parties*." *Hayes*, 298 Ark. at 356, 767 S.W.2d at 525 (emphasis added). Moreover, Rule 3.8(b)–(c) is couched in the defendant's right to counsel, of which we held in *Krieger I* that Krieger had been adequately informed of before executing the stipulation agreement. And finally, as the circuit court found in its order denying postconviction relief, even had a special prosecutor been appointed in this case, it is unlikely the outcome would have changed. For these reasons, we hold that the circuit court did not clearly err in denying postconviction relief on this point.

6. *Trial counsel was ineffective in failing to argue that the results of the polygraph test violated the constitutional right of confrontation and also violated the prohibitions against hearsay in the Arkansas Rules of Evidence*

22

For his last subpoint under this section, Krieger argues that his trial counsel was ineffective for not challenging the polygraph results on the basis of a violation of Krieger's constitutional right to confrontation and on the basis of inadmissible hearsay. Krieger specifically takes issue with the following excerpt from the exhibit containing the polygraph test results admitted into evidence:

> It is the opinion of this Investigator (Investigator Shelton) that *Deception* was indicated on the charts. A cold call was placed to Howard County Sheriff's Investigator Blake Eudy, Nashville Police Department Investigator Larry Marion and Instructor Gene Shook of the National Institute of Truth Verification and they agreed that *Deception* was indicated on the charts.

(Emphasis in original.)

In the circuit court's order denying postconviction relief under this point, it found that an objection to polygraph tests results based on confrontation and hearsay was preempted by the supreme court in *Hayes*. We conclude that, even were we to assume that Krieger's trial counsel was ineffective for failing to object to the above excerpt from the exhibit containing the polygraph results on the bases of confrontation and hearsay, such an objection would not have had a reasonable probability of changing the outcome of the trial. This is because the opinions of other examiners that deception was indicated on the polygraph charts were merely cumulative to the competent testimony of Investigator Shelton, who arrived at the same conclusion. Therefore, Krieger's deception on the polygraph test would have been before the jury even had such an objection been made. Accordingly, we cannot say that the circuit court's denial of postconviction relief on this point was clearly erroneous.

23

B.  Trial Counsel Was Ineffective for Failing to Proffer the Recordings of Forensic Interviews with MV to Which Dr. Stephen Thorne Would Have Testified Were Improperly Conducted

Krieger's remaining argument is that his trial counsel was ineffective for failing to proffer the two forensic interviews of MV.  Krieger had retained Dr. Stephen Thorne to provide expert testimony about inconsistencies in MV's statements during the two interviews and his opinion that the interviewers failed to adequately explore these inconsistencies.  The trial court denied admissibility of Dr. Thorne's testimony because it would invade the province of the jury and the interviews themselves were not in evidence.  Krieger's trial counsel then proffered Dr. Thorne's testimony, but he did not proffer or seek to admit the forensic interviews.

Krieger asserts that on direct appeal from his conviction, he argued that Dr. Thorne's testimony was improperly excluded, but this court in *Krieger I* found no error on that point because the interviews were neither introduced into evidence nor proffered by Krieger.  We thus concluded in *Krieger I* that the record presented failed to demonstrate any prejudicial error in excluding the expert's testimony.

Krieger now argues that his trial counsel's failure to proffer the interviews was ineffective assistance of counsel because it served as a procedural default on direct appeal.  Krieger states that had the interviews been proffered, there is a reasonable probability that Krieger would have prevailed on appeal.

In its order denying postconviction relief on this point, the circuit court found that the State had made no attempt to introduce the forensic interviews into evidence and that

24

Krieger's counsel's decision not to offer the interviews into evidence was a matter of trial strategy. The circuit court watched and listened to the interviews at the postconviction hearing, and in these interviews MV described the sexual assault and never recanted her allegations. The circuit court found further that although Dr. Thorne's proposed testimony was not admitted at trial, Krieger's counsel cross-examined MV about alleged inconsistencies in her testimony. Although the forensic interviews were not introduced, Krieger's counsel specifically cross-examined MV with statements she had made in those interviews.

We hold that even had Krieger's counsel proffered the forensic interviews there would not have been a reasonable probability of changing the outcome of the proceedings. In denying the admission of Dr. Thorne's testimony, the trial court found that it would invade the province of the jury. We observe that, to the extent Dr. Thorne's testimony was being offered as an opinion about MV's inconsistencies and whether she was being truthful, the supreme court has held that it is erroneous to permit an expert to give an opinion as to the credibility of a witness. *See Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). And although Dr. Thorne identified areas that he thought should have been explored by the interviewers including the fact that MV's grandmother was allegedly in the room during the sexual assault, as found by the circuit court these were matters that could be addressed through Krieger's cross-examination of MV. Having considered the totality of the circumstances, we are not left with a definite and firm conviction that the circuit court made a mistake in denying postconviction relief on this point; therefore, we hold that the circuit court's decision in this regard was not clearly erroneous.

## V. *Conclusion*

For the reasons stated herein, we find no clear error in the circuit court's denial of Krieger's Rule 37 petition for postconviction relief. Accordingly, we affirm.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.